No. 100,497

MARGARET RUSSELL LAW, *Appellant*, v. LAW COMPANY BUILDING ASSOCIATES, a Kansas Limited Partnership, and THE LAW COMPANY, INC., a Kansas Corporation, *Appellees*.

(289 P.3d 1066)

Opinion filed September 28, 2012.

*Michael R. Levin*, of Baker & Hostetler LLP, of Orlando, Florida, argued the cause, and *F. James Robinson, Jr.*, of Hite, Fanning & Honeyman, LLP, of Wichita, was with him on the briefs for appellant.

*Thomas D. Kitch,* of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, argued the cause, and *Ron L. Campbell* and *Roarke R. Gordon,* of the same firm, were with him on the briefs for appellees.

The opinion of the court was delivered by

LUCKERT, J.: The primary issue before this court is whether the Court of Appeals erred in holding that an action seeking reformation of an executory contract does not accrue until a party discovers a mutual mistake in the contract language. We conclude this holding is contrary to a long line of cases in which this court has held: (1) A claim for reformation of a contract is subject to the contract statute of limitations stated in K.S.A. 60-511(1), (2) a cause of action for reformation of a contract accrues when a mutual mistake is made, (3) the legislature has not provided a discovery exception in K.S.A. 60-511, (4) the courts cannot write a discovery exception into K.S.A. 60-511, and (5) the discovery exception of K.S.A. 60-513(3) does not apply to reformation of a contract based on a mutual mistake because the exception only applies when a party alleges or proves fraud. Based on these principles, we hold a cause of action for reformation of a contract based on an alleged mutual mistake accrues when the mistake is made, not when the mutual mistake is discovered. We further conclude that the application of these rules does not depend on whether a contract is executed or executory and the rules do not vary just because the contract relates to the title of real property, contrary to the Court of Appeals' holding. Consequently, we reverse the Court of Appeals' holding and affirm the district court's order of summary judgment in which the district court found that the plaintiff's reformation claim was barred by K.S.A. 60-511(1) because the mutual mistake occurred when the contract was executed, which was more than 5 years before this case was filed.

The defendants raise three additional issues, but we do not resolve these issues because we conclude they are not properly before us for appellate review. The case is remanded for consideration of the plaintiff's remaining claims.

## FACTS AND PROCEDURAL BACKGROUND

This case was brought by Margaret Russell Law, who filed claims

for breach of contract, breach of the implied duty of good faith and fair dealing, reformation of contract, and declaratory judgment against The Law Company, Inc. and Law Company Building Associates (LCBA) (collectively referred to as the Defendants). These claims arose from a financial agreement relating to a commercial building in Wichita.

Law entered into a contractual relationship with the Defendants through a series of transactions that occurred after Law received stock in The Law Company in 1979 as part of a property settlement with her former husband, who was a founder of The Law Company. The Law Company is a Wichita architectural, engineering, and construction firm. At the request of some of the principals in The Law Company, Law agreed to exchange her stock for ownership of the office building occupied entirely by The Law Company; this building is referred to as the "Market Street Building." The Law Company and Law then entered into a 25-year landlord and tenant lease that expired on December 31, 2004. Under the lease, Law had the right to sell the Market Street Building or to lease the building to a third party at the conclusion of the 25-year lease term.

In 1980, seeking larger office space, The Law Company developed property known as the "Riverview Building" and leased a portion of the premises to tenants that were not affiliated with The Law Company. The building was developed with the use of industrial revenue bonds (IRBs), and a long-term leasehold interest was conveyed to LCBA, a limited partnership formed by The Law Company for the purpose of holding title to the Riverview Building.

On January 12, 1984, Law and the Defendants entered into a "Financing Agreement." Under the terms of the Financing Agreement, Law sold her interest in the Market Street Building to LCBA and the lease on that property was cancelled. In exchange, LCBA granted Law "equity participation rights" in the Riverview Building, which entitled Law to, among other things, an agreement for LCBA to pay Law $406,836.19 and an 11 percent equity participation share in the gross proceeds of any future sale or refinancing or 11 percent of the liquidation proceeds upon the termination of

LCBA. The parties also executed a promissory note, secured by a mortgage, which provided for periodic payments to Law until December 31, 2004.

In 1986, LCBA offered to prepay the promissory note in exchange for a release of the mortgage by Law. The parties could not agree on an interpretation of the prepayment clause in the promissory note. This dispute resulted in litigation that included an appeal to the Court of Appeals. See *Law Co. Bldg. Assocs. v. Law*, No. 67,545, unpublished opinion filed April 2, 1993, *rev. denied* 253 Kan. 859 (1993). Although the issues in that appeal have little relevance to the present litigation, the fact there was extensive litigation spanning several years serves as the basis for the Defendants to argue that any mistake in the Financing Agreement should have been discovered during that litigation, which would make Law's claims untimely under any interpretation or application of K.S.A. 60-511(1).

On June 24, 2002, Marc A. Porter, vice president of The Law Company and general partner of LCBA, executed a "Certificate of Amendment to Certificate of Limited Partnership of Law Company Building Associates" continuing the term of the LCBA limited partnership until December 31, 2024, unless dissolved sooner. The certificate was filed with the Kansas Secretary of State on June 27, 2002. Porter testified in a deposition that LCBA was extended because the Defendants had no intention of selling the Riverview Building and faced significant taxes if LCBA were liquidated or dissolved. The result of this extension was that the Defendants invoked Paragraph 4(a) of the Financing Agreement and maintained they were not obligated to discharge Law's equity participation.

Paragraph 4(a) provides: "[T]he Equity Participant [Law] shall be entitled to 11% of the liquidation proceeds upon expiration of the term of LCBA in 2004 or earlier dissolution. (Paragraph 4(e) shall apply if the term of LCBA shall be extended by the partners thereof to a date later than December 31, 2004.)" The referenced paragraph 4(e) of the Financing Agreement is entitled "Discharge of Equity Participation." In that provision, the parties agreed that the "Equity Participation shall apply to each Refinancing but is

discharged upon completion of one or more transactions which, taken together, amount to a Sale of all of the IRB Project or all LCBA partnership interests." The remainder of the paragraph provides examples of how the equity participation would be calculated in the event of a series of partial sales. As the Court of Appeals stated, it "curiously . . . does not speak to any such 'discharge' in the event of LCBA term extension beyond the December 2004 date." *Law v. Law Company Building Assocs.*, 42 Kan. App. 2d 278, 280-81, 210 P.3d 676 (2009), *rev. granted* September 7, 2010. As we will discuss in more detail, this omission serves as the basis for Law's contract reformation claim.

Law made her claim for contract reformation after the promissory note matured, the term of LCBA was extended, and the Defendants refused to pay her equity participation. According to an affidavit submitted by Porter:

"(A) Pursuant to the terms of the Promissory Note, Law Company paid Margaret Law the principle [*sic*] sum of $406,836.19 when the note matured on December 31, 2004. The total amount of money paid to Margaret Law for the Market Street Property, including interest, during the period from April 10, 1984, through December 31, 2004, was approximately two and one-fourth million dollars ($2,250,000.00);

"(B) On June 24, 2002, the term of the LCBA limited partnership was extended to December 31, 2024. LCBA has not expired and has not been dissolved or liquidated;

"(C) The Riverview Building has not been sold or refinanced."

In November 2006, Law filed her petition in the present case. Law attached to her petition an "Intermediate Draft" of the Financing Agreement. According to Law, this unexecuted draft memorialized the parties' intent that Law had the right to liquidation of the equity participation if the partners extended the term of LCBA. Paragraph 4(e) of the Intermediate Draft, entitled "Discharge of Equity Participation," provides in part:

"Further, if (i) the partners of LCBA extend the term of LCBA to a date later than December 31, 2004, or the liquidation of LCBA does not commence by April 15, 2005 for any other reason, and (ii) the Equity Participation has not previously been discharged, then the Equity Participant shall then have a right to liquidation of the Equity Participation upon one hundred twenty (120) days' advance notice to LCBA."

Law asserted that this provision was inadvertently omitted from the Financing Agreement as the result of a mutual mistake.

In Count I of her petition, Law alleged that the Defendants' refusal to pay her the fair liquidation value of the equity participation in 2005 constituted a breach of the Financing Agreement. Law also argued:

"LCBA and the Law Company have further breached and anticipatorily breached the Financing Agreement as properly construed by failing to pay the full amount due under the Promissory Note and by wrongfully attempting to justify a minimal valuation of the Equity Participation by claiming that funds used for debt reduction, payment of the IRB Bonds, usual and customary repair and maintenance and other operating expenses should be a credit against the Equity Participation to be paid to the Plaintiff."

In Count II, Law argued that the Defendants breached the implied duty of good faith and fair dealing

"by failing to pay the fair liquidation value of the Equity Participation in a timely fashion[;] by failing to pay the full amount due under the Promissory Note; by attempting to inaccurately depict the Equity Participation as minimal by claiming that usual and customary repair and maintenance expenses and other operating expenses should be credit[ed] against the value of the Equity Participation; by knowingly and wrongfully attempting to take advantage of an inadvertent scrivener's error that is contrary to the intent of the parties; and by knowingly refusing to pay the funds due to Plaintiff in the hope that she would be unwilling or unable to assert her rights."

In Count III, Law asked the court to reform the Financing Agreement to include this "inadvertently omitted" provision of Paragraph 4(e) that was "mistakenly" omitted from the executed Financing Agreement. Finally, in Count IV, Law requested a declaratory judgment to determine whether the inadvertently omitted language should be read into the Financing Agreement, whether she was entitled to immediate liquidation of the equity participation under the Financing Agreement "as properly construed," and the amount that should be awarded to her under the Financing Agreement.

The Defendants answered, denying all of Law's claims and asserting a counterclaim for declaratory judgment that the Defendants had paid the promissory note in full. They also filed a motion to dismiss, claiming all of Law's claims were barred by the appli-

cable statutes of limitations, K.S.A. 60-511 and K.S.A. 60-507. They also argued: (1) Law was precluded from offering parol evidence of the Intermediate Draft; (2) Law's claim for the implied duty of good faith and fair dealing should be dismissed because it failed to state a claim for which relief could be granted; and (3) Law should be estopped based on the prior lawsuit between the parties from asserting that the Financing Agreement does not reflect the parties' intent.

The district court held a hearing on the Defendants' motion. The Defendants argued that all of Law's claims were subsumed by her contract reformation claim and, therefore, barred by K.S.A. 60-511. Law countered that she had raised four separate counts and that her claims were filed within 5 years of the Defendants' breach of contract, as required by K.S.A. 60-511. In arguing that the reformation claim in Count III was not barred, Law relied on *Klepper v. Stover*, 193 Kan. 219, 392 P.2d 957 (1964), as support for her argument that the contract statute of limitations does not begin to run on a cause of action for correction of a mutual mistake until the mistake is discovered or could have been discovered by due diligence.

Law also raised an equitable estoppel argument, asserting that in 1989, when the Defendants argue the statute of limitations ran on Law's claim, the parties were involved in a lawsuit in which the Defendants were attempting to sell the Market Street Building as quickly as possible. Finally, Law raised an issue of ultra vires, arguing that Porter was not empowered by the LCBA Board to execute the extension.

The district court treated the Defendants' motion as one for summary judgment and granted the motion solely on the ground that Law's claims were subsumed within her claim for contract reformation and barred by the 5-year statute of limitations set forth in K.S.A. 60-511. The court entered the following order:

"1. Considering this matter in the light most favorable to the plaintiff and assuming the existence of a mutual mistake, this is a contract reformation claim. All matters that are argued and presented in this case by plaintiff are subsumed within that claim.

"2. Plaintiff's claims are barred by the five-year statute of limitations set forth in K.S.A. 60-511. Plaintiff's estoppel and unclean hands arguments do not have merit and do not preclude application of this statute of limitations.

"3. Plaintiff's reliance on *Klepper v. Stover*, 193 Kan. 219, 392 P.2d 957 (1964), is also misplaced.

"4. Plaintiff's claims of *ultra vires* have not been sufficiently presented."

Law filed a motion to alter or amend the district court's judgment. She claimed: (1) The district court erroneously consolidated all of her claims into the contract reformation claim, and (2) the district court should not have dismissed her contract reformation claim or her ultra vires claim. After hearing oral arguments on Law's motion, the district court took the matter under advisement and later denied the motion without elaboration.

Law appealed to the Court of Appeals.

## Court of Appeals' Decision

The Court of Appeals first considered Law's argument that the district court erred in collapsing her alternative claims into the contract reformation claim. The majority determined that while some of Law's assertions of breach of the implied duty of good faith and fair dealing in Count II were "related—if not dependent—upon Law's reformation claim," other assertions in Count II were independent of her claim for reformation. *Law*, 42 Kan. App. 2d at 284-85. The majority explained:

"[Law] elaborates this claim in her reply brief and at oral argument by suggesting that LCBA has no current legitimate business purpose and that the extension in its term was 'to delay paying a *long-promised Equity Participation* to an 80 year old woman.' Particularly due to her advancing age (83), she argues that *the agreement as construed by defendants* means that they control when—if ever—she will be able to realize her equity interest in the new building. This claim—so articulated—*has no basis in allegations regarding any 'mistake' in the instrument itself*, but rather is based on an implied obligation *pursuant to the agreement as executed*." (Emphasis added.) *Law*, 42 Kan. App. 2d at 285.

In addition, the Court of Appeals held the 5-year statute of limitations period began to run on the date of a breach of the implied duty of good faith and fair dealing, which in this case occurred in 2005, making Law's claim timely. *Law*, 42 Kan. App. 2d at 287.

The Court of Appeals also reversed the district court's dismissal of all of Law's declaratory judgment claims, ruling that some of them were independent of her contract reformation claim. The court remanded these claims for further proceedings. *Law*, 42 Kan. App. 2d at 286-87.

Next, the Court of Appeals considered Law's similar argument with regard to her breach of contract claim. It ruled:

"To the extent [Law] can shoulder her burden on remand in pursuing her claim based on the implied covenant of good faith and fair dealing, we view her claim for express breach of contract (Count I of Petition) as surviving, at least in part. As noted by [Law] on appeal, this count neither alleges any 'mistake' nor seeks reformation of the Financing Agreement. Instead, it claims—in part—that the defendants have breached the terms of an associated promissory note and that [Law's] equity participation has been unjustifiedly valued by defendants by debits that were not authorized by the agreement." *Law*, 42 Kan. App. 2d at 287.

The Court of Appeals reversed the district court's termination of this claim *"to this extent only"* and remanded for further proceedings. *Law*, 42 Kan. App. 2d at 288.

Finally, the Court of Appeals considered the district court's application of the statute of limitations to Law's contract reformation claim. The Court of Appeals considered a line of Kansas cases establishing a rule that the statute of limitations begins to run on a reformation claim upon execution of the contract, which the Court of Appeals referred to as the "unique rule of accrual at execution." *Law*, 42 Kan. App. 2d at 288-90. The Court of Appeals concluded this rule had been applied in cases where reformation claims had been limited to attempts to reform a deed or another instrument creating an interest in land. The Court of Appeals reasoned that the policy of the rule is to promote marketable title and that this policy is inapplicable where the instrument sought to be reformed is an executory contract between the original parties. Thus, the Court of Appeals concluded the unique rule of accrual at execution does not apply to claims made during the term of performance of an executory contract. *Law*, 42 Kan. App. 2d at 290-91.

A majority of the Court of Appeals reversed the district court's termination of Law's reformation claim and remanded for further

proceedings on this claim as well. The majority noted, however, that Law "will have to shoulder the burden of establishing that she could not with reasonable diligence have discovered the basis for her claims more than 5 years prior to her suit." *Law*, 42 Kan. App. 2d at 291.

Judge Pierron dissented, stating that Law had asserted a cause of action for reformation of a contract executed almost 30 years ago and that the statute of limitations had run. *Law*, 42 Kan. App. 2d at 291-92 (Pierron, J., dissenting).

The Defendants filed a petition seeking this court's discretionary review in which the Defendants raised three issues: (1) Whether the Court of Appeals erred in holding that the implied covenant of good faith and fair dealing may be used to prevent a party to a contract from performing as expressly agreed; (2) whether the Court of Appeals erred in holding that the discovery rule applies to the accrual of the statute of limitations period for an action seeking reformation of an executory contract; and (3) whether the Court of Appeals erred in failing to address two other arguments. These additional arguments included: (a) Whether the Financing Agreement was unambiguous and, thus, there was no basis for admitting the parol evidence upon which Law must rely to support her contract reformation claim, and (b) whether Law's claims were also barred by the 15-year statute of limitations contained in K.S.A. 60-507.

This court granted review, obtaining jurisdiction under K.S.A. 20-3018(b) (petition for review). It is important to note that only a portion of the Court of Appeals' ruling is subject to our review. The Defendants have not challenged the holdings that many of Law's claims of breach of the implied duty of good faith and fair dealing, of breach of contract, and for declaratory judgment are independent of her reformation claim. Nor have they challenged the Court of Appeals' holding that the breach of the implied covenant occurred in 2005, meaning that at least some of Law's independent claims are not barred by K.S.A. 60-511. As we have explained, "[a]bsent application of a permissive exception for plain error, under Supreme Court Rule 8.03(a)(5)(c) (2011 Kan. Ct. R. Annot. 69) on petitions for review, the Supreme Court will not

consider issues not presented in the petition or fairly included therein." *State v. Allen*, 293 Kan. 793, Syl. ¶ 1, 268 P.3d 1198 (2012). Further, "[u]nder Supreme Court Rule 8.03(g)(1), a party must allege that an issue was decided erroneously by the Court of Appeals in order for the issue to be properly before the Supreme Court on petition for review." *Allen*, 293 Kan. 793, Syl. ¶ 2.

## STANDARD OF REVIEW

Even though the Defendants' motion was filed as a motion to dismiss, there is no dispute that the district court appropriately considered the Defendants' motion as one for summary judgment because the court considered matters outside the pleadings. See K.S.A. 60-212(b)(6), (d). An appellate court's standard of review when a motion to dismiss has been treated as a motion for summary judgment matches that for summary judgment: Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See *Dodge City Implement, Inc. v. Board of Barber County Comm'rs*, 288 Kan. 619, Syl. ¶ 1, 205 P.3d 1265 (2009).

## ISSUE 1: EXTENT OF DUTY OF GOOD FAITH AND FAIR DEALING

The Defendants first take issue with what they characterize as the Court of Appeals' "holding that the implied covenant of good faith and fair dealing may be used to prevent a party to a contract from performing as expressly agreed." This "holding" was based on the Court of Appeals' interpretation of *Kansas Baptist Convention v. Mesa Operating Limited Partnership*, 253 Kan. 717, 864 P.2d 204 (1993). See *Law*, 42 Kan. App. 2d at 285-87.

We disagree with the Defendants' argument that this was a holding of the Court of Appeals. Rather, the Court of Appeals' discussion of this matter was mere dicta. To explain this conclusion, we examine the context of the Court of Appeals' statements and the substance of the parties' arguments.

In discussing Law's claims regarding a breach of the implied duty of good faith and fair dealing, the Court of Appeals addressed an

argument the Defendants made in their appellate brief about Law's allegations in Count II of her petition. The Defendants contended the district court could have and should have ruled that Law failed to state a viable claim of breach of the implied duty of good faith and fair dealing. This alternative to the statute of limitations argument was itself divided into two prongs. First, the Defendants argued a breach of the implied duty of good faith and fair dealing must be based on allegations that are distinct from a plaintiff's breach of contract claims and that Law failed to meet this requirement in pleading Count II. Second, they argued a claim of breach of the implied duty must be based on an existing contractual term and cannot change the parties' agreement; they argued Law's allegations failed in this regard as well. It is this second prong that the Court of Appeals addressed.

In response to the Defendants' arguments, Law presented a procedural rather than a substantive argument. She suggested the issue was not properly before the Court of Appeals because "[t]he trial court did not rule on the sufficiency of the Plaintiff's pleading of Count II and the arguments and authorities advanced by the Defendants do not support an effort by this Court to rule on this issue without a ruling from the Court below."

In making these arguments, neither party cited *Kansas Baptist Convention*. The case was apparently first cited by Law during oral arguments before the Court of Appeals. Law then later filed a Rule 6.09(b) letter regarding the decision. See Supreme Court Rule 6.09(b) (2011 Kan. Ct. R. Annot. 49). In the letter, Law argued that *Kansas Baptist Convention* established that "Kansas law implies the covenant of good faith and fair dealing in every contract, except employment at will contracts." Law further argued: "This included [the Defendants'] duty to fairly and faithfully discharge [Law's] Equity Participation *as agreed*. In addition, at a time when LCBA no longer had a legitimate business purpose [the Defendants] could not fairly extend the term of LCBA so as to frustrate [Law's] right to the Equity Participation." (Emphasis added.) In a responsive Rule 6.09(b) letter, the Defendants suggested *Kansas Baptist Convention* was factually distinguishable and concluded: "Based on the allegation in [Law's] 6.09(b) letter that the parties

had *agreed* to discharge her Equity Participation at a date certain, [*Kansas Baptist Convention*] is inapplicable."

Against this backdrop, the Court of Appeals majority began its discussion of *Kansas Baptist Convention* by stating:

"Contrary to the argument advanced by defendants, a party can breach this implied covenant *absent* a specific covenant. In fact, our Supreme Court has noted that Kansas courts will impose an obligation of good faith that would override express contract terms, except in the area of employment-at-will. *Kansas Baptist Convention*, 253 Kan. at 724-26.

"Our Supreme Court's opinion in *Kansas Baptist Convention* demonstrates the viability of such a claim under remarkably similar circumstances." *Law*, 42 Kan. App. 2d at 286.

Summarizing *Kansas Baptist Convention*, the Court of Appeals stated that the case stood for the concept that "where one party to a contract has gained the ability to destroy or injure the economic interest of the other party, a claim may lie for breach of implied covenant even though no express provisions of the contract have been breached." *Law*, 42 Kan. App. 2d at 286. The Court of Appeals reasoned:

"Here, [Law] similarly alleges that the ability of LCBA to forever deny realization of her equity participation by unwarranted extensions has breached the same implied covenant. We express no opinion on the merits of her claim; we simply hold that such a claim is not governed by the unique accrual upon execution rule applicable to reformation claims." *Law*, 42 Kan. App. 2d at 286.

This inconclusive discussion of the "potential viability" of Law's claim is clearly dicta. The question of the scope and application of the implied covenant of good faith and fair dealing is not an issue that was decided by the district court or the Court of Appeals, and it is not an issue that must be decided to determine if the district court erred in granting summary judgment. The Court of Appeals, as previously quoted, found many of Law's implied covenant claims had "no basis in allegations regarding any 'mistake' in the instrument itself, but rather [are] based on an implied obligation pursuant to the agreement as executed." *Law*, 42 Kan. App. 2d at 285. Hence, the court's ruling regarding whether the implied covenant claims were collapsed into the reformation claim did not depend

on the potential viability of a claim under the *Kansas Baptist Convention* holding.

As dicta, the Court of Appeals' discussion of *Kansas Baptist Convention* is not binding. As this court stated in *Medford v. Board of Trustees of Park College,* 162 Kan. 169, 173, 175 P.2d 95 (1946): "Nobody is bound by dictum [, citation omitted,] 'not even . . . the court itself when it may be further enlightened by briefs and arguments of counsel and mature consideration and when it becomes a question squarely presented for decision.' [Citations omitted.]"

This statement from *Medford* is particularly apt in this case because the parties' arguments before us regarding *Kansas Baptist Convention* make it clear that the question of how *Kansas Baptist Convention* applies to this case depends on the resolution of several disputed facts that may distinguish this case from *Kansas Baptist Convention*. In large part, the parties' arguments on the issue are factual rather than legal, and they dispute all of the material facts that frame the legal arguments. These disputed facts were not resolved by the district judge, who made no factual findings and merely assumed there had been a "mutual mistake."

These factual disputes prevent us from analyzing the scope of the implied covenant of good faith and fair dealing as it is not appropriate to resolve the disputes on appeal. See *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.,* 292 Kan. 285, 325, 255 P.3d 1186 (2011) (appellate court does not weigh conflicting evidence or determine questions of fact). Consequently, at this point, all we can do is repeat the words found in *Kansas Baptist Convention* and then hypothetically discuss how it might apply in this case. Because of the wide array of possible factual resolutions that might occur in the district court, this guidance would be of minimal value. Moreover, as our discussion of the parties' arguments illustrates, it is not even clear that Law is relying on *Kansas Baptist Convention* in the way it was discussed by the Court of Appeals majority. Finally, it would be inappropriate for us to reconsider any holdings in *Kansas Baptist Convention* when it is not clear those holdings are at issue in this appeal. The appropriate time for the parties' arguments to be addressed is before the district court on remand where the parties' contentions can be

defined, factual findings can be made, and the law can be applied to those known facts.

## ISSUE 2: ACCRUAL ON DISCOVERY OR WHEN MISTAKE IS MADE?

The next and primary issue—and one we can resolve—is whether the Court of Appeals erred in holding that Law's reformation claims did not accrue until the alleged mutual mistake was discovered because the Financing Agreement was executory. *Law*, 42 Kan. App. 2d at 290-91.

The Defendants argue this ruling is contrary to a long line of Kansas cases. In addition, the Defendants assert that the following public policy arguments support application of the accrual-on-execution rule to *all* claims for reformation of a contract: (1) the rule protects parties from doubt and the hazards of litigation; (2) it enforces the fundamental rule that a party to a contract has a duty to read and examine its terms; (3) it increases the likelihood that claims based on contract terms will be brought at a time when witnesses are available and memories are fresh; and (4) it preserves the sanctity of contracts.

Law maintains the Court of Appeals majority correctly ruled that the 5-year statute of limitations period with regard to her contract reformation claim should run from the date of discovery of the mistake and not from the date of the mistake itself. She urges us to affirm the Court of Appeals majority's reasoning that the public policy of promoting the marketability of title has "little applicability to executory contracts between two contracting parties who mutually make a mistake." See *Law*, 42 Kan. App. 2d at 290.

Thus, the parties' arguments and the Court of Appeals' decision present an issue of when the statute of limitations under K.S.A. 60-511(1) begins to run on a claim to reform an executory contract because of a mutual mistake: (1) on execution of or agreement to a contract, which is the point in time when the mutual mistake is made, or (2) on discovery of the alleged mutual mistake. In considering this choice, we begin with a general discussion of K.S.A. 60-511 and the long line of caselaw in which this court has applied the rule that a claim for reformation accrues on execution or for-

mation of a contract. We will then look at the reasons the Court of Appeals departed from these cases.

*A. K.S.A. 60-511(1) and the General Rule that Contract Actions Accrue on Breach, Not When the Breach Is Discovered*

The statute of limitations that applies to claims for reformation of a contract is K.S.A. 60-511(1). See *Beams v. Werth*, 200 Kan. 532, 544, 438 P.2d 957 (1968) (reformation of deed; citing K.S.A. 60-511[5]). Consequently, our analysis begins with an examination of the statutory language in K.S.A. 60-511. That examination is governed by the well-known standard that interpretation and application of a statute of limitations is a question of law over which an appellate court's review is unlimited. As in any situation in which a court is called upon to interpret or construe statutory language, the touchstone is legislative intent. To divine legislative intent, a court begins by examining and interpreting the language the legislature used. Only if that language is ambiguous does a court rely on any revealing legislative history or background considerations that speak to legislative purpose, as well as the effects of application of canons of statutory construction. When a statute is plain and unambiguous, a court merely interprets the language as it appears; a court is not free to speculate and cannot read into the statute language not readily found there. *Stewart Title of the Midwest v. Reece & Nichols Realtors*, 294 Kan. 553, 557, 276 P.3d 188 (2012); *Robinson v. City of Wichita Retirement Bd. of Trustees*, 291 Kan. 266, 280, 241 P.3d 15 (2010).

The statute that is the focus of this appeal is K.S.A. 60-511, which provides in relevant part:

"The following actions shall be brought within five (5) years: (1) An action upon any agreement, contract or promise in writing.

. . . .

"(5) An action for relief, other than the recovery of real property not provided for in this article."

Before the Court of Appeals, Law argued that "[u]nlike breach of contract claims, which expressly fall within K.S.A. 60-511(1), equitable claims for reformation fall within the catchall provisions of K.S.A. 60-511(5)." With regard to the question of accrual date,

however, there is no distinction in the statute between K.S.A. 60-511(1) and K.S.A. 60-511(5).

Notably, neither subsection nor any other portion of the statute specifically addresses accrual. Further, the statute includes no exceptions such as the discovery one found in K.S.A. 60-513(3), which provides that "[a]n action for relief on the ground of fraud . . . shall not be deemed to have accrued until the fraud is discovered."

The distinction between the language in K.S.A. 60-511 and K.S.A. 60-513(3) has played an important role in this court's application of K.S.A. 60-511. For example, as long ago as 1904, in the oft-cited case of *Railway Co. v. Grain Co.*, 68 Kan. 585, Syl. ¶ 2, 75 Pac. 1051 (1904), this court determined that a prior version of the fraud discovery exception did not apply to the contract statute of limitations. Even though *Railway Co.* is over a century old, we begin our discussion with that case because it is cited as guiding authority in virtually all of the cases relied on by the parties and the Court of Appeals.

*Railway Co.* was based on a claim that the defendant had breached an executory, oral contract. The plaintiff argued the statute of limitations did not accrue at the time the defendant breached the contract because the defendant fraudulently concealed the breach. In rejecting this argument, the *Railway Co.* court noted the discovery exception that applied to actions seeking relief on the ground of fraud—the exception previously found in G.S. 1901, ch. 80, art. 3, § 4446, sec. 18, *Third*, now found in K.S.A. 60-513(3)—but concluded the exception did not apply to a contract action. The exception, the court noted, was limited by its wording to actions seeking relief for fraud. The *Railway Co.* court stated:

"There may be strong reasons for making an exception where there is concealment of a cause of action or where the element of fraud enters somewhat into the breach of the contract upon which an action is brought. The legislature, however, after considering the subject, did not deem it wise to make such exception, but on the other hand positively declared that concealed fraud shall operate to toll the statute in the single action brought for relief on the ground of fraud." *Railway Co.*, 68 Kan. at 589.

Ultimately, the *Railway Co.* court held:

"The action accrues when the contract is violated and not at the time when the plaintiff learns that it has been violated. In the absence of a statute making concealment an exception to the statute of limitations, the courts cannot create one, however harsh and inequitable the enforcement of the statute may be. [Citations omitted.]" *Railway Co.*, 68 Kan. at 591.

In the long line of cases following *Railway Co.*, this court has frequently recognized that the *Railway Co.* holding represents a minority position when compared to decisions of courts in other jurisdictions. For example, in *State, ex rel., v. McKay*, 140 Kan. 276, 281, 36 P.2d 327 (1934), the court cited *Railway Co.* and noted its holding is "not in harmony with some decision of other states." Nevertheless, the *McKay* court noted that the Kansas rule had been followed for "more than a generation" and during this time the court had made it clear that the policy issues were for the Kansas Legislature to decide, not the court. *McKay*, 140 Kan. at 281.

Many of the cases spanning "more than a generation" were discussed in *Regier v. Amerada Petroleum Corp.*, 139 Kan. 177, 30 P.2d 136 (1934), a case cited by the Court of Appeals majority in this appeal and relied on by the Defendants. *Regier* was originally filed as a quiet title action; then, in a cross-petition, the defendants sought reformation of the property description in a deed on the ground of mutual mistake. The defendants argued they did not discover the mistake in the deed until nearly 30 years after it had been recorded. The *Regier* court held the cross-petition was barred by the statute of limitations based on the *Railway Co.* rule that an "action accrues when the contract is violated and not at the time that the plaintiff learns that it has been violated." *Regier*, 139 Kan. at 182. The *Regier* court did not cite any special considerations arising from the fact the case dealt with a deed. Instead, after reviewing many of the cases following *Railway Co.* and observing there is a "radical difference of judicial opinion" across the country regarding whether a contract cause of action accrues when a breach occurs or when a breach is discovered, the court reaffirmed the reasoning of *Railway Co.* and refused to "ingraft a new exception upon statute of limitations." *Regier*, 139 Kan. at 182.

Yet, the court acknowledged that the accrual-on-discovery rule had been applied in two cases that also dealt with mistakes in deeds—*Duvall v. Simpson*, 53 Kan. 291, 36 Pac. 330 (1894), *overruled by Regier*, 139 Kan. at 183, and *Coal Co. v. Miller*, 88 Kan. 763, 129 Pac. 1170 (1913), *overruled by Regier*, 139 Kan. at 183. Despite the fact these cases were based on a discovery rule that was contrary to *Railway Co.* and similar cases, they had never been expressly overruled. Nevertheless, the *Regier* court determined that "the long line of decisions . . . following and approving the theory adopted in *Railway Co. v. Grain Co.*, . . . in effect does overrule them" because "exceptions may not be added to those prescribed by the legislature nor implied, and . . . the fact that a party does not know that he has a cause of action does not prevent the running of the statute of limitations, *and the rule of these later cases must be now regarded as controlling.*" (Emphasis added.) *Regier*, 139 Kan. at 183.

In a series of cases following *Regier*, this court applied the accrual-upon-execution rule to several reformation claims. Virtually every case dealt with reformation of a deed. See, *e.g.*, *Palmer v. The Land & Power Co.*, 180 Kan. 492, 500, 306 P.2d 152 (1957) (citing G.S. 1949, 60-306, a prior version of K.S.A. 60-511, and holding that an action to reform a deed or to correct a mistake in a conveyance must be brought within 5 years of when the deed was executed or recorded); *Siegel v. Hackler, Administrator*, 181 Kan. 316, 318, 310 P.2d 914 (1957) (citing G.S. 1949, 60-306, *Sixth*, and providing, in dicta, that if the proceeding were to be considered as one to reform a deed on the ground of mutual mistake it was filed too late as it was filed more than 5 years after the deed was executed); accord *Collins v. Richardson*, 168 Kan. 203, 209, 212 P.2d 302 (1949) (action to reform trust regarding real property; citing G.S. 1935, 60-313, and holding that "[c]onsidered as a cause of action to obtain reformation on the ground of mistake, the statute commenced to run from the date the mistake was made").

After a recodification of the statutes of limitations, the court reaffirmed these holdings in *Beams*, 200 Kan. at 544. The court stated that the prior statute, G.S. 1949, 60-306, *Sixth*, and the holdings in *Regier* and other cases "confirm that an action to reform a

deed on the ground of mutual mistake of the parties must be brought within the five-year period of the statute of limitations." *Beams*, 200 Kan. at 544. The court continued: "There is no indication in any of the commentaries on K.S.A. 1967 Supp. 60-511(5) that any change was intended regarding this section of the statute of limitations in the new code of civil procedure." *Beams*, 200 Kan. at 544.

In reaching this conclusion, the *Beams* court did not discuss an intervening case that took a different approach—*Klepper v. Stover*, 193 Kan. 219, 219-22, 392 P.2d 957 (1964). *Klepper* has been cited by Law throughout the proceedings, but the district court concluded Law's reliance was "misplaced." The Court of Appeals majority disagreed and relied on *Klepper* for its decision.

In *Klepper*, the plaintiff sought to reform a lease because of an alleged mutual mistake in the legal description of the real property. The defendants appealed after the district court rejected their argument that the plaintiff's claim was barred by the statute of limitations. On appeal, the *Klepper* court reversed the district court, finding that the property description in the lease was a mutual mistake by the original parties and that the request for reformation was not barred by the statute of limitations because the defendants were estopped from raising a statute of limitations defense. *Klepper*, 193 Kan. at 220.

Before discussing the doctrine of equitable estoppel, the *Klepper* court found its case distinguishable from *Regier*. The court then made the statements on which the Court of Appeals relied in this case:

"Generally speaking, in equity where mistake is sought to be corrected, limitation statutes do not begin to run on the cause of action until the time when the mistake is discovered or when by use of due diligence it ought to have been discovered. (34 Am. Jur., Limitations of Actions, § 174, p. 139.) This is particularly true where a mistake is the basis of the gravamen of the action. (53 C.J.S., Limitations of Actions, § 91, b., p. 1067, c., p. 1069.)" *Klepper*, 193 Kan. at 221-22.

Although the *Klepper* court cited these encyclopedic statements of the accrual-on-discovery rule that Kansas had repeatedly rejected, the *Klepper* court did not rely on this rule to hold that the reformation action was timely and not barred by the statute of

limitations. Instead, the *Klepper* court transitioned from its discussion of accrual—without reaching a decision regarding accrual—and began a discussion of tolling based on equitable principles. For tolling to occur and the doctrine of estoppel to apply, the court stated that there must be "an element of deception upon which the plaintiff acted in good faith in reliance thereon to his prejudice whereby he failed to commence the action within the statutory period." *Klepper*, 193 Kan. at 222. The *Klepper* court had already noted its reliance on *Rex v. Warner*, 183 Kan. 763, 771, 332 P.2d 572 (1958), a case that applied equitable estoppel principles, not accrual rules. Ultimately, the *Klepper* court concluded that "there are sufficient allegations in plaintiff's petition to allege an equitable estoppel against defendants' attempt to invoke the statute of limitations as a bar to plaintiff's cause of action." *Klepper*, 193 Kan. at 222. Hence, although there is dicta in *Klepper* that supports the Court of Appeals majority's decision, the *Klepper* court's holding was not based on a determination regarding when the contract reformation claim had accrued but it was based on estoppel principles that prevented the defendant from asserting the defense.

In this appeal, the Defendants suggested to the Court of Appeals that *Klepper* was distinguishable because it " 'involved a different doctrine—estoppel.' " The Court of Appeals majority acknowledged that "the factual context of *Klepper* must be distinguished on this basis." Nevertheless, the majority felt the decision was "instructive." The majority continued:

"We believe the [*Klepper*] court was clear in stating the rules applicable to an executory lease in a manner quite differently from the 'line of cases' previously discussed, and because the subject of the reformation claim in *Klepper* was an executory lease, the rule was cited and stated to include a discovery rule to *toll* the statute [of limitations] under appropriate circumstances." (Emphasis added.) *Law*, 42 Kan. App. 2d at 289.

In the closing portion of this passage, the Court of Appeals majority recognized that *Klepper* applied the discovery rule as an equitable principle to *toll* the statute of limitations. Without explanation, however, the Court of Appeals ultimately did not apply equitable *tolling* rules that come into issue once an action has ac-

crued. Instead, the Court of Appeals transformed the rule to one of *accrual.*

Before further discussing the Court of Appeals' analysis, we note that the estoppel analysis in *Klepper* is of limited help to Law in this appeal. Law presented equitable estoppel arguments to the district court, but the district court rejected the arguments, stating: "Plaintiff's estoppel and unclean hands arguments do not have merit and do not preclude application of this statute of limitations." On appeal, she did not ask for that ruling to be reversed and has waived that issue. See *State v. Raskie,* 293 Kan. 906, 919, 269 P.3d 1268 (2012) (citing *State v. Conley,* 287 Kan. 696, 703, 197 P.3d 837 [2008]) (failure to give supporting authority or adequately brief issue constitutes waiver); *Cooke v. Gillespie,* 285 Kan. 748, 758, 176 P.3d 144 (2008). Hence, for Law to prevail on appeal, she must establish the Court of Appeals correctly morphed the tolling rule into a rule of accrual.

### B. *The Court of Appeals Departs From This Long Line of Cases*

In transforming the equitable tolling rules of *Klepper* into a rule of accrual, the Court of Appeals majority relied on *Ferrell v. Ferrell,* 11 Kan. App. 2d 228, Syl. ¶¶ 1, 2, 719 P.2d 1, *rev. denied* 239 Kan. 693 (1986). The majority concluded the *Ferrell* court "recognized that the unique rule of accrual upon execution for reformation claims should be limited to situations where there is a challenge to a deed." *Law,* 42 Kan. App. 2d at 290. This conclusion was based on a quotation in the *Ferrell* decision from *Beams* in which the *Beams* court stated: " 'Prior decisions confirm that an action to *reform a deed* on the ground of mutual mistake of the parties must be brought within the five-year period of the statute of limitations.' " (Emphasis added.) *Ferrell,* 11 Kan. App. 2d at 231 (quoting *Beams,* 200 Kan. at 544); see *Law,* 42 Kan. App. 2d at 200.

The Court of Appeals' reliance on this passage to extrapolate any rule of accrual is puzzling because the sentence says nothing about accrual of a cause of action. And this statement was merely made as part of the *Ferrell* court's analysis that led it to the conclusion that the 5-year statute of limitations in K.S.A. 60-511(5) applied to

a deed reformation claim rather than the longer quiet title statute of limitations in K.S.A. 60-507. *Ferrell*, 11 Kan. App. 2d 228, Syl. ¶ 1; see K.S.A. 60-507 ("No action shall be maintained for the recovery of real property or for the determination of any adverse claim or interest therein, not provided for in this article, after fifteen [15] years from the time the cause of action accrued."). Also, although the facts of *Ferrell* related to an alleged mistake in a deed and the court cited cases relating to the reformation of a deed, there is nothing in the *Ferrell* court's reasoning that suggests the court felt there was a basis to formulate a unique accrual rule specifically for deeds.

Nevertheless, building on the *Klepper* court's statement about equitable tolling of an executory contract and the *Ferrell* court's statement indicating that the contract statute of limitations applied to claims for reformation of a deed, the Court of Appeals majority in this case reasoned:

"Obviously, the applicable statute of limitations has occupied an essential and important function in cases addressing deeds or instruments of conveyance that are placed of record; the application of the rule in these cases is designed to set a maximum time period in which to bring an action and to give security to the possession and ownership of land as against those who have failed to bring their action within the prescribed period. The policy underpinning is clearly to promote marketable titles, but these beneficial effects of the rule are clearly inapplicable where the instrument sought to be reformed is an executory contract between the original parties and where an essential aspect of the agreement for performance, after 20 years, has allegedly been frustrated if not destroyed by one of the parties." *Law*, 42 Kan. App. 2d at 290.

The reasoning that a more limited time period—one that would not be extended because a mistake had not been discovered—is an important policy when marketable title is at stake is contrary to the *Ferrell* court's recognition that the longer 15-year statute of limitations provided for in K.S.A. 60-507 applies to a quiet title action—an action whose sole purpose is to resolve adverse and competing interests that cloud the marketability of title. The *Ferrell* court noted it was the plaintiff's decision how to plead a cause of action and that the plaintiff shortened the time period for filing the action by choosing reformation as a remedy. *Ferrell*, 11 Kan. App. 2d at 230. Another consideration that undercuts the Court of

Appeals' rationale that marketability of title justifies a different rule is this court's past holding that the equitable remedy of reformation is "subject to being cut off by a bona fide purchaser." *Beams*, 200 Kan. at 544.

In sum, we find no persuasive basis for concluding the *Ferrell* court was carving a rule applicable to deeds or for distinguishing real estate contracts and deeds from other contracts.

Nor do we find a basis for a separate rule for executory contracts. *Railway Co.* involved an executory contract and yet the court held the claim for breach of the contract accrued when the breach occurred, not when the breach was discovered. *Railway Co.*, 68 Kan. at 591. This accrual-upon-execution rule derives from a long-standing rule that contract actions accrue as soon as the right to maintain a legal action arises. *E.g.*, *Estate of Draper v. Bank of America*, 288 Kan. 510, 534, 205 P.3d 698 (2009); see also *Freeto Construction Co. v. American Hoist & Derrick Co.*, 203 Kan. 741, 746, 457 P.2d 1 (1969) (citing *Regier*, 139 Kan. at 181-82); *Price, Administrator v. Holmes*, 198 Kan. 100, 106, 422 P.2d 976 (1967) (citing *Regier*). A cause of action for breach of contract accrues on the date of breach, not the date of discovery, and, likewise, a cause of action for reformation of a contract based on mutual mistake accrues on the date of mistake, not the date of discovery of the mistake. As a federal court applying Kansas law to an executory contract held in *Pizza Management, Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1159 (D. Kan. 1990): "Breach of the real or true agreement may enable the parties to discover their mutual mistake in the written instrument, but it is only the making of the mistake which allows the party to bring an action to reform and which triggers the commencement of the five-year limitations period." See *Graphic Technology, Inc. v. Pitney Bowes Inc.*, 968 F. Supp. 602, 607 (D. Kan. 1997) (applying the rule of accrual upon execution in *Regier* and its progeny to a claim for reformation of a stock purchase agreement).

Further, we have not found any decision where the executed or executory nature of the contract made a difference in the determination of whether a reformation claim had accrued for statute of limitations purposes. Rather, although application of a statute of

limitations was not at issue, there are a few jurisdictions that have indicated the rules regarding reformation are the same whether the instrument being reformed is executed or executory. See *Kolski ex rel. Kolski v. Kolski*, 731 So. 2d 169, 172-73 (Fla. Dist. App. 1999); *S. Dep. & T. Co. v. Coal & Coke Co.*, 234 Pa. 100, 109, 83 A. 54 (1912); *Russell v. Curran.*, 66 Wyo. 173, 189, 206 P.2d 1159 (1949).

Finally, we note that in reaching its holding the Court of Appeals majority deviated from the long line of cases that we have discussed in which this court refused to apply a discovery exception in a contract reformation case based on an alleged mutual mistake. In these cases, this court adhered to a rule stating that the discovery exception in K.S.A. 60-513(a)(3) " 'only applies when the party against whom the bar of the statute is interposed is required to allege fraud in pleading his cause of action or to prove fraud to entitle him to relief.' [Citation omitted.]" *McKay*, 140 Kan. at 280. The *McKay* court explained that if a claim does not require proof of fraud, the exception does not apply even if there is evidence of fraud. *McKay*, 140 Kan. at 280.

A claim for contract reformation based on an alleged mutual mistake, such as Law alleges in this case, does not depend on or require proof of fraud. See *Unified Gov't of Wyandotte County v. Trans World Transp. Svcs.*, 43 Kan. App. 2d 487, 490, 227 P.3d 992 (2010) (claim for reformation of lease and deed based on mutual mistake does not require proof of fraud and "may be shown even if the parties did not carefully examine [the instrument] to ascertain whether it expressed their agreement" or on "[m]ere negligence in executing or accepting a written instrument"). The discovery exception of K.S.A. 60-513(a)(3) does not apply to a claim for reformation of a contract based on an alleged mutual mistake.

On the other hand, if a plaintiff has pleaded fraud as the basis for the reformation rather than mutual mistake, requiring the plaintiff to prove fraud in order to recover, this court has applied the discovery rule of K.S.A. 60-513(3). *E.g.*, *Goforth v. Franklin Life Ins. Co.*, 202 Kan. 413, 427, 449 P.2d 477 (1969) (reformation of insurance policy on ground of fraud must be filed within 2 years of discovery of fraud under K.S.A. 60-513[3]); *Mingenback v. Min-*

*genback*, 176 Kan. 471, 478-80, 271 P.2d 782 (1954) (statute of limitations in action for reformation of deed based on fraud did not begin to run until discovery of fraud); but see *Woodworth v. Kendall*, 172 Kan. 332, 335, 239 P.2d 924 (1952) (cause of action for reformation of lease due to fraud in the inception of the lease started to run under G.S. 1949, 60-306, *Third*, on date of lease's execution). *Cf. Kelly v. Primeline Advisory, Inc.*, 256 Kan. 978, 988, 889 P.2d 130 (1995) (concluding that even though statute of limitations for a statutory cause of action is governed by K.S.A. 60-512[2] because a cause of action under K.S.A. 17-1268[a] is *fraud based*, it does not accrue until "the plaintiffs discover [or reasonably should have discovered] the alleged fraud").

Here, Law has based her reformation claim on mutual mistake, not fraud, and she cannot take advantage of the discovery exception in K.S.A. 60-513(3). Her cause of action accrued when the alleged mistake was made, and her alleged failure to discover the mistake until years later does not alter the date of accrual under K.S.A. 60-511(1). The Kansas Legislature has not provided a discovery exception in K.S.A. 60-511, and Kansas courts cannot engraft an exception which the legislature, perhaps because of the policy issues raised by the Defendants, has not included in the statute. This principle has been applied by this court in the contract cases we have discussed, as well as in other cases subject to other statute of limitations bars. *E.g.*, *Kelly v. VinZant*, 287 Kan. 509, 527-28, 197 P.3d 803 (2008) ("In contrast [to K.S.A. 60-513(b)], however, the battery limitations provision does not contain any similar language, merely providing an action for battery shall be brought within 1 year. K.S.A. 60-514[b]. Kelly asks us to graft an exception onto K.S.A. 60-514 such as the legislature has provided in K.S.A. 60-513. That argument belongs in the legislature, not here."); *Pizel v. Zuspann*, 247 Kan. 54, 74, 795 P.2d 42, *modified on other grounds by* 247 Kan. 699, 803 P.2d 205 (1990) ("A cause of action for breach of contract accrues when a contract is breached . . . , irrespective of any knowledge on the part of the plaintiff or of any actual injury it causes.").

We agree with the separation of powers principles that control these cases and conclude the Court of Appeals erred in applying a

discovery exception not recognized by the Kansas Legislature. Hence, we conclude Law's cause of action for reformation of the contract accrued when the Financing Agreement was executed, which was more than 5 years before this action was filed.

ISSUE 3: OTHER GROUNDS NOT TO BE CONSIDERED FOR FIRST TIME ON APPEAL

Finally, the Defendants argue that two other grounds not addressed by the Court of Appeals, but raised before the district court in their motion to dismiss, support the district court's dismissal of this case: (a) The Financing Agreement is unambiguous and, thus, there is no basis for admitting the parol evidence upon which Law must rely to support her reformation claim, and (b) Law's claims are also barred by the 15-year statute of limitations contained in K.S.A. 60-507.

As argued before us, the issue of admissibility of parol evidence relates to Law's attempt to admit the Intermediate Draft to support her reformation claim. Because we have affirmed the district court's grant of summary judgment on Law's reformation claim, this issue is moot. Further, as we have discussed, K.S.A. 60-507 does not apply to contract reformation claims. See *Beams v. Werth,* 200 Kan. 532, 544, 438 P.2d 957 (1968).

To the extent either argument extends beyond Law's reformation claims, the parol evidence and K.S.A. 60-507 issues were not discussed or decided by either the district court or the Court of Appeals. Generally, the issues before this court on a petition for review are limited to issues that "were decided erroneously by the Court of Appeals"; nevertheless, "[i]n civil cases, the Supreme Court may, but need not, consider other issues that were presented to the Court of Appeals and that the parties have preserved for review." Rule 8.03(g)(1) (2011 Kan. Ct. R. Annot. 72). Typically, this preservation depends on the requirement that "[i]n a civil case, the petitioner [filing a petition for review] shall also list, separately and without argument, additional issues *decided by the district court* that were presented to, but not decided by, the Court of Appeals, which the petitioner wishes to have determined if review

is granted." (Emphasis added.) Rule 8.03(a)(5)(c) (2011 Kan. Ct. R. Annot. 70).

While this court has occasionally reviewed issues not decided in the district court or the Court of Appeals, doing so takes this court outside its traditional role as an appellate court and works to the disadvantage of the parties because they cannot formulate arguments in response as they would in an appeal from a district court ruling. Usually, there must be a compelling or persuasive reason for us to act in the role traditionally reserved for the district court. No such reason is presented here, and we decline to address the issues of the admissibility of parol evidence and the application of K.S.A. 60-507.

### SUMMARY

In summary, the Court of Appeals' ruling that Law alleged separate and independent claims for breach of the implied duty of good faith and fair dealing, breach of contract, and declaratory judgment are not subject to our review because those rulings were not raised in the petition for review. Consistent with the Court of Appeals' decision, the case is remanded to the district court for consideration of those claims.

The district court's decision on the single issue subject to our review—that Law's reformation of contract claim is barred by the K.S.A. 60-511(1) 5-year statute of limitations—is affirmed, the Court of Appeals' decision reversing the district court on that issue is reversed, and the case is remanded to the district court for further proceedings.

MORITZ, J., not participating.

BRENDA M. CAMERON, District Judge, assigned.