IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,205

KRISTIN BUTLER and SCOTT BOZARTH,
*Plaintiffs,*

v.

SHAWNEE MISSION SCHOOL DISTRICT
BOARD OF EDUCATION,
*Defendant/Appellee,*

and

ATTORNEY GENERAL DEREK SCHMIDT,
*Intervenor/Appellant.*

SYLLABUS BY THE COURT

Constitutional avoidance is a long-standing doctrine of judicial procedure that strongly counsels against a court deciding a case on a constitutional question if the case can be resolved in some other fashion, especially when the question concerns the validity of a statute enacted by our coordinate branches of state government.

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Opinion filed January 7, 2022. Reversed.

*Brant M. Laue*, solicitor general, argued the cause, and *Dwight R. Carswell*, deputy solicitor general, and *Kurtis K. Wiard*, assistant solicitor general, and *Derek Schmidt*, attorney general, were with him on the briefs for intervenor/appellant.

1

*Gregory P. Goheen*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, argued the cause, and *Rachel B. England*, general counsel, was with him on the briefs for defendant/appellee Shawnee Mission School District Board of Education.

*Scott Bozarth*, plaintiff pro se, and *Kristin Butler*, plaintiff pro se, were on a supplemental brief.

*Mark P. Johnson*, *Stephen R. McAllister,* and *Betsey L. Lasister*, of Dentons US LLP, of Kansas City, Missouri, and *Clay Britton*, chief counsel, were on the brief for amicus curiae Governor Laura Kelly.

*W. Joseph Hatley*, *Stephanie Lovett-Bowman*, and *Angus Dwyer*, of Spencer Fane LLP, of Kansas City, Missouri, and *Melissa D. Hillman*, chief legal counsel, were on the brief for amicus curiae Blue Valley Unified School District No. 229.

*Luke A. Sobba*, of Topeka, was on the brief for amicus curiae Kansas Association of School Boards Legal Assistance Fund.

*Miriam E. C. Bailey*, of Polsinelli PC, of Kansas City, Missouri, was on the brief for amicus curiae The Kansas Chamber of Commerce.

*Samuel G. MacRoberts*, of Overland Park, was on the brief for amicus curiae Kansas Justice Institute.

*Linus L. Baker*, of Stilwell, was on the brief for amicus curiae collectively referred to as the Johnson County Plaintiffs in Case No. 21cv01942.

The opinion of the court was delivered by

BILES, J.:  In this COVID-19 era case disputing public school policies mandating face masks, we confront a threshold question about the district court's decision to dive into constitutional waters to consider the validity of newly enacted legislation when none of the litigants asked it to do so and the court itself acknowledged the legislation did not

2

apply to the case. Given these circumstances, we hold it was error for the court to declare 2021 Senate Bill 40 invalid and unenforceable based on the infirmities it observed. We reverse that portion of the court's judgment subject to this appeal and express no opinion about S.B. 40's constitutionality.

We recognize this decision may be just a temporary retreat from a raging storm, but it reflects necessary adherence to a long-standing doctrine of judicial self-restraint known as constitutional avoidance. This rule strongly counsels against courts deciding a case on a constitutional question if it can be resolved in some other fashion, especially when the question concerns the validity of a statute enacted by our coordinate branches of state government. See *Smith v. Kansas Dep't of Revenue*, 291 Kan. 510, 519, 242 P.3d 1179 (2010) (declining to reach constitutional concerns over statute authorizing field sobriety tests based on reasonable suspicion, when facts demonstrated probable cause). Any expediency in having a more prompt resolution to the constitutional questions surrounding this legislation does not justify departure from this doctrine and the principles supporting it. *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 345-46, 56 S. Ct. 466, 80 L. Ed. 688 (1936) (Brandeis, J., concurring).

We caution, though, that our decision should not be seen as crafting some inflexible new barrier to the exercise of judicial authority in an appropriate setting. A court may very well need to fulfill its duties in our system of checks and balances by engaging in—or even initiating—constitutional inquiry into legislative enactments applicable to a controversy properly before it. But the justifications for sidestepping the guardrails marking our well-settled avoidance doctrine's boundaries must be more compelling and more closely linked to the affected litigation and its litigants than what we have here. *Blair v. United States*, 250 U.S. 273, 279, 39 S. Ct. 468, 63 L. Ed. 979 (1919) ("Considerations of propriety, as well as long-established practice, demand that we refrain from passing upon the constitutionality of an act of Congress unless obliged to

3

do so in the proper performance of our judicial function, when the question is raised by a party whose interests entitle him to raise it.").

FACTUAL AND PROCEDURAL BACKGROUND

On March 12, 2020, Governor Laura Kelly proclaimed a state of disaster emergency for the State of Kansas in response to the COVID-19 pandemic. About four months later, the Governor issued executive order no. 20-59 before the 2020-2021 school year, exercising her emergency powers under K.S.A. 2020 Supp. 48-925 during states of disaster. This order provided that "K-12 public and private schools shall require all students, faculty, staff, vendors and other visitors to public or private K-12 school attendance centers to cover their mouth and nose with a mask or other face covering at all times" unless a listed exception applied.

The Shawnee Mission School Board adopted a "District Operational Plan for Reopening Schools" in a July 27, 2020, resolution. One aspect of the resolution provided:

"Masks

&bull; Cloth face coverings/masks will be required for all students, staff, and visitors 5 years and older.
&bull; We will work on a case by case basis with those students/staff unable to wear a mask.
&bull; Masks will be provided to students/staff who soil/forget theirs.
&bull; Educational information regarding the proper use of masks will be provided to students, staff, and parents.
&bull; Staff PD will include information related to proper use of masks."

About eight months later, the Legislature passed 2021 Senate Bill 40, which was signed by the Governor and became effective on March 25, 2021. Section 1 of that

legislation addressed COVID-19 mitigation measures affecting "the operation of any school or attendance center" of Kansas school districts. It provided:

"(a)(1) During the state of disaster emergency related to the COVID-19 health emergency described in K.S.A. 2020 Supp. 48-924b, and amendments thereto, only the board of education responsible for the maintenance, development and operation of a school district shall have the authority to take any action, issue any order or adopt any policy made or taken in response to such disaster emergency that affects the operation of any school or attendance center of such school district, including, but not limited to, any action, order or policy that:

(A) Closes or has the effect of closing any school or attendance center of such school district;

(B) authorizes or requires any form of attendance other than full-time, in-person attendance at a school in the school district, including, but not limited to, hybrid or remote learning; or

(C) mandates any action by any students or employees of a school district while on school district property.

(2) An action taken, order issued or policy adopted by the board of education of a school district pursuant to paragraph (1) shall only affect the operation of schools under the jurisdiction of the board and shall not affect the operation of nonpublic schools.

(3) During any such disaster emergency, the state board of education, the governor, the department of health and environment, a local health officer, a city health officer or any other state or local unit of government may provide guidance, consultation or other assistance to the board of education of a school district but shall not take any action related to such disaster emergency that affects the operation of any school or attendance center of such school district pursuant to paragraph (1).

5

"(b) Any meeting of a board of education of a school district discussing an action, order or policy described in this section, including any hearing by the board under subsection (c), shall be open to the public in accordance with the open meetings act, K.S.A. 75-4317 et seq., and amendments thereto, and may be conducted by electronic audio-visual communication when necessary to secure the health and safety of the public, the board and employees.

"(c)(1) An employee, a student or the parent or guardian of a student aggrieved by an action taken, order issued or policy adopted by the board of education of a school district pursuant to subsection (a)(1), or an action of any employee of a school district violating any such action, order or policy, may request a hearing by such board of education to contest such action, order or policy within 30 days after the action was taken, order was issued or policy was adopted by the board of education. Any such request shall not stay or enjoin such action, order or policy.

(2) Upon receipt of a request under paragraph (1), the board of education shall conduct a hearing within 72 hours of receiving such request for the purposes of reviewing, amending or revoking such action, order or policy. The board shall issue a decision within seven days after the hearing is conducted.

(3) The board of education may adopt emergency rules of procedure to facilitate the efficient adjudication of any hearing requested under this subsection, including, but not limited to, rules for consolidation of similar hearings.

"(d)(1) An employee, a student or the parent or guardian of a student aggrieved by a decision of the board of education under subsection (c)(2) may file a civil action in the district court of the county in which such party resides or in the district court of Shawnee county, Kansas, within 30 days after such decision is issued by the board. Notwithstanding any order issued pursuant to K.S.A. 2020 Supp. 20-172(a), and amendments thereto, the court shall conduct a hearing within 72 hours after receipt of a petition in any such action. The court shall grant the request for relief unless the court finds the action taken, order issued or policy adopted by the board of education is

6

narrowly tailored to respond to the state of disaster emergency and uses the least restrictive means to achieve such purpose. The court shall issue an order on such petition within seven days after the hearing is conducted. If the court does not issue an order on such petition within seven days, the relief requested in the petition shall be granted.

(2) Relief under this section shall not include a stay or injunction concerning the contested action taken, order issued or policy adopted by the board of education that applies beyond the county in which the petition was filed.

(3) The supreme court may adopt emergency rules of procedure to facilitate the efficient adjudication of any hearing requested under this subsection, including, but not limited to, rules for consolidation of similar hearings." L. 2021, ch. 7, § 1.

S.B. 40 contains 15 other sections. Several impose similar substantive limits on COVID-19 mitigation measures adopted by other governmental entities. E.g., L. 2021, ch. 7, §§ 2(d)(1) (challenges to community and technical college actions); 6(g)(1) (challenges to executive orders); 8(e)(1) (challenges to actions taken by local government units); 12(d)(1) (challenges to actions taken by board of county commissioners acting as community health board). Remaining provisions deal with other facets of the Kansas emergency management scheme. E.g., L. 2021, ch. 7, §§ 3(a) (altering makeup of Legislative Coordinating Council); 5 (continuing then-ongoing statewide state of disaster emergency); 6(a)-(f), (h) (defining Governor's emergency powers); 7 (limit on Governor's powers in state of emergency related to COVID-19); 9 (penalties for violating executive order imposing curfew or prohibiting entry into disaster-affected area); 10 (definitions applicable to Kansas Intrastate Emergency Mutual Aid Act); 11 (powers of Secretary of Health and Environment); 12(b)(2) (procedure for local health officers proposing certain orders to boards of county commissioners); 13 (about division of powers between Governor and State Finance Council).

S.B. 40, section 5(a) also extended the state of disaster emergency declared by the Governor's April 20, 2020, proclamation through May 28, 2021. L. 2021, ch. 7, § 5(a). Simultaneously, S.B. 40, section 5(c) purported to revoke "all executive orders issued during the state of disaster emergency," effective March 31, 2021. L. 2021, ch. 7, § 5(c).

*The underlying litigation in this appeal: Round one*

On May 28, 2021, Kristin Butler and Scott Bozarth sued the Shawnee Mission School District and its individual board members challenging the district's mask policy for the just-concluding 2020-2021 school year. They asserted S.B. 40 as the only legal authority for their lawsuit. Butler is the mother of children who attended an elementary school in SMSD during the 2020-2021 school year. Bozarth is the father of a child who attended a middle school in the district during the same school year. Butler obtained an exemption excusing her children from the district's mask policy. Bozarth did not. Both plaintiffs represented themselves pro se.

To start their lawsuit, Butler and Bozarth used a form petition published by this court. See Kansas Supreme Court Administrative Order 2021 RL 032, effective April 13, 2021. In response to the form's request for a description about how they were aggrieved, they claimed:

> "Butler's and Bozarth's children/child are mandated (syn commanded, directed, instructed) to wear masks in order to attend school. This violates federal law, the ethics of the Nuremberg code, and a parent[']s right to decide medical treatment for their child. Furthermore, the district cannot and will not produce empirical scientific data justifying their policy nor any analysis informing parents, students, and staff of risk and benefits of the policy."

8

They demanded as relief for their claim the return of the filing fee; compensation for expenses "Butler incurred consulting doctors about health issues her children suffered as a result of the district's policy"; production of "all records pertaining to the formulation of the adopted COVID-19 policy"; and an order requiring the district to "remove mandatory masks" and obtain informed consent. No one questions their good faith in bringing this action despite disagreements over the substantive merits.

Their factual basis becomes clearer by looking at the documents attached to the pleadings. On April 30, 2021, Bozarth received an e-mail announcement from the school district advising that its COVID-19 mitigation measures implemented the previous summer, including its mask requirement, remained in place. The announcement stated the district decided to leave its existing policy in place after consultation with state and local public health professionals.

On May 6, 2021, Butler and Bozarth each e-mailed the SMSD Board of Education members to register grievances with the district's mask policy. Butler told the members she was disappointed in the board's "decision to implement mask wearing and to keep the mandate after the county decided it was optional." Bozarth likewise explained that he took "grievance with your COVID response policy, particularly mandating masks." They each requested hearings on their complaints. Bozarth specifically cited S.B. 40.

In identical "Notice[s] Concerning Requested S.B. 40 Hearing," each dated May 6, SMSD Superintendent Dr. Michael Fulton denied Butler and Bozarth's hearing requests. He explained,

> "After review, we are hereby providing notice that your request has been denied. S.B. 40,
> 2021 Kansas Legislature, 2021 Regular Session (Kansas 2021) entitles individuals to a

9

hearing within 72 hours of request, but only if the request meets legal requirements. Please be advised that your request was denied for the following reason:

> The action taken, order issued, or policy adopted by the board did not happen within 30 days of the request. . . . The Board of Education's Resolution on Affirming Reopening Plan was adopted more than 30 days ago (adopted July 27, 2020). The Board has not made any changes to this Resolution since it was adopted."

On May 28, the Friday before the Memorial Day weekend, Butler and Bozarth sued. About two hours later, the district court set a hearing on the petition for Wednesday, June 2.

On June 1, SMSD moved to dismiss the petition. It argued the district properly denied the hearing requests because Butler and Bozarth did not challenge the mask policy within 30 days; that S.B. 40 cannot be retroactively applied to an action taken before the law took effect; and that the May 6 denials of their hearing requests were not subject to judicial review under S.B. 40. SMSD also asserted the lawsuit was moot because the school year ended on May 27, the statewide COVID-19 state of disaster emergency ended on May 28, and S.B. 40, section 1 applied only from March 25, 2021, through the end of the state of disaster emergency. Finally, it argued the individual board members were not proper parties to the action. Notably, SMSD did not assert S.B. 40 was unconstitutional in its motion to dismiss.

Five calendar days after this lawsuit's filing, the district court held a livestreamed hearing via Zoom on Wednesday, June 2. Our appellate record does not have a recording or official hearing transcript of this hearing, but a video of it can be found on the district court's YouTube channel.

10

On June 8, the district court dismissed the individual defendants based on the parties' agreement during the June 2 hearing. It also entered a written order provisionally denying relief to Butler and Bozarth on the grounds their claim was moot and untimely. The court concluded Butler and Bozarth were challenging the district's nearly year-old mask policy. And based on that, it held the plaintiffs identified no district action that fell within S.B. 40's 30-day timeframe. The court explained that in its view S.B. 40 was not retroactive, applied only to policy changes after the legislation became law, and plaintiffs had identified no other policy injuring them that was enacted within 30 days of their district-level complaints. In other words, the court concluded they could not use S.B. 40 to attack the district's 2020 mask policy because that policy was adopted before S.B. 40's effective date and long before their May 6 complaints to SMSD.

The court's provisional order then provided a blended discussion in which it alternated between addressing the problems with the plaintiffs' claims under S.B. 40 and the court's perceived difficulties with S.B. 40 itself. The court concluded:

> "In this case, for example, the children of the plaintiff/petitioners are not attending school or even compelled to be in school or wear masks. Ms. Butler's one child will be in band camp which does not begin until June 14-18, and, presumably, is a voluntary program where her child is not compelled to either attend much less wear a mask. *After carefully questioning the plaintiffs, it is apparent their SB 40 suit is not about any policy that occurred with*[*in*] *the past 30 days.*

> "*The apparent emergency features of SB 40 do not apply to this case.* Plaintiffs' children are not in school. Courts do not decide moot issues or render advisory opinions unless a real controversy exists that requires determination. *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012). While the mootness doctrine is subject to exceptions, including one where the harm is capable of repetition or involves a question of public importance, *State v. DuMars*, 37 Kan. App. 2d 600, 605, 154 P.3d 1120, *rev. denied* 284 Kan. 948 (2007), the nature of the pandemic and its now-shifting guidelines

11

makes it highly doubtful that the pandemic policy that was enacted in the dark days of uncertainty, will be the same policy, if any, in the months ahead before schools reopen in the fall. [Nothing] has changed since July 2020. Accordingly, *this action is subject to dismissal as moot without a showing of specific and current harm to the plaintiffs that meets the requirements of SB 40*. Plaintiffs are ordered to demonstrate, within 10 days of this order, any action, beyond an email, that the District has taken that constitutes some current policy that impacts their children. If they cannot demonstrate the same, this suit will be dismissed." (Emphases added.)

But the court went on. It observed that "[e]ven if plaintiffs conceivably could show some harm, *significant problems exist with SB 40*." (Emphasis added.) It focused on S.B. 40's short timelines and provisions throughout the Act that require judgment in the plaintiffs' favor if courts fail to issue timely rulings. The court branded this as "attempt[ing] to pressure courts to give preference to hear and then decide [S.B. 40] cases within seven days of the hearing or otherwise '*the relief requested in the petition shall be granted*.'" And the court concluded this "tips the scales of justice toward the plaintiff[s] as a judicial goad" and "disrupts due process upon pain of an insufficiently responsive judiciary." The court declared itself "convinced that SB 40 presents significant constitutional problems" that triggered intervention by the Attorney General under K.S.A. 75-764(b)(2) (requiring notice of the disputed validity of a statute to be served on the Attorney General to be given an opportunity to appear and be heard) before it could go further.

In a footnote, the court acknowledged it was introducing these constitutional concerns without prompting or suggestion by the parties. It explained,

> "The Court raises these serious issues *sua sponte* because it has been given no choice but to adjudicate a case and controversy within a scheme that cannot be separated from its impact on the judiciary. *Tolen v. State*, 285 Kan. 672, 675-76, 176 P.3d 170, 173 (2008) (citing *State v. Adams*, 283 Kan. 365, 367, 153 P.3d 512 (2007) (addressing a

12

speedy trial issue *sua sponte* because consideration of the issue was necessary to serve the ends of justice or prevent the denial of fundamental rights)."

The court invited the Attorney General to intervene and be heard on S.B. 40's constitutionality and allowed Butler and Bozarth to supplement their allegations if they desired.

*The underlying litigation in this appeal: Round two*

The Attorney General accepted this notice, and the district court directed the court clerk to add the Attorney General as an intervenor in the case. The Attorney General filed a brief defending S.B. 40. He contended any constitutional questions were moot because SMSD's statutory authority to issue mask mandates under S.B. 40 had expired with the termination of the state of disaster emergency. And based on that expiration, he argued against applying mootness exceptions for issues capable of repetition and of public importance. See *State v. Roat*, 311 Kan. 581, 466 P.3d 439 (2020) (reviewing our state's mootness doctrine). As to SMSD's status as a litigant, the Attorney General claimed the district lacked standing to challenge S.B. 40 on due process grounds because, in his view, political subdivisions of the state have no due process rights. Finally, he argued S.B. 40 did not unconstitutionally encroach on judicial powers in violation of the separation of powers doctrine.

Butler and Bozarth did not participate in this round of the proceedings, but the school district did. It countered that the constitutional issues raised by the court were not moot because S.B. 40, section 1's restrictions could be revived with a COVID-19 resurgence, so a decision now would prevent future violations of all school districts' rights. The district also argued it had standing to raise a procedural due process challenge, and that S.B. 40 infringed on those rights. In particular, it contended S.B. 40's procedures

13

implicated its constitutionally protected interests in its school funds since there was a potential for damage awards; and that S.B. 40 infringed on its authority under article 6, section 5 of the Kansas Constitution to operate the local public school system. Finally, SMSD noted the court should formally dismiss the plaintiffs' claims against it because Butler and Bozarth did not submit new evidence within the 10-day window the court allowed. The court's June 8 order also prompted the Kansas Association of School Boards Legal Assistance Fund to file an amicus brief supporting SMSD on behalf of 280 public school districts and 31 education cooperatives.

In reply, the Attorney General reasserted his position that objections about the law's validity were moot. He also advanced a new argument based on a recently decided case, *Baker v. Hayden*, 313 Kan. 667, 672, 490 P.3d 1164 (2021), to assert that changed circumstances deprived SMSD of standing to challenge S.B. 40's validity.

On July 15, the court entered its judgment. It finalized its initial decision dismissing the plaintiffs' claims as moot and untimely, noting it had received no new evidence from Butler and Bozarth to avoid that result. Then, it held S.B. 40's enforcement provisions unconstitutional. It ruled the new legislation deprived "the relevant governmental units of due process while also violating the constitutional separation of powers between the judicial and legislative branches." And the court concluded the Attorney General failed to meet his burden of proving that concerns about S.B. 40 were moot, noting that even if S.B. 40, section 1 expired with the statewide COVID-19 state of disaster emergency, other provisions could apply to future emergencies. It noted S.B. 40, section 12, which applies to local health authorities and contains judicial enforcement provisions like those applicable to school districts, did not expire with the statewide COVID-19 state of disaster emergency. The court stated, "Arguably, if the unconstitutional pandemic provisions in §§ 1 and 2 expire, this does not prevent this from

14

happening again which is an exception to mootness." The court finished its mootness analysis by reasoning:

> "The Attorney General's invocation of the mootness doctrine cannot sidestep the significant due process problems and judicial nullification posed by SB 40. Whether it is this pandemic, a variant that may require another pandemic emergency, or any kind of future emergency, this issue is too important and capable of repetition to be ignored. It fits within the exceptions to mootness where the harms are capable of repetition or involve questions of public importance, *State v. DuMars*, 37 Kan. App. 2d 600, 605, 154 P.3d 1120, *rev. denied*, 284 Kan. 948 (2007). Those clearly are at stake here. If, for example, the plaintiffs had raised a constitutional issue or fundamental violation of their rights, then, ordinarily, the Court would address the same to avoid repetition of the harm, even if the events surrounding the same had receded at the time of a hearing."

Then, returning to the constitutional issues, the court addressed the Attorney General's standing argument. The court appears to have concluded that once the school district became a litigant in court, it obtained procedural due process rights and standing to assert those rights. The court rejected the contention that changed circumstances had destroyed standing. It distinguished *Baker* because "SB 40 has not disappeared and neither have the alleged constitutional violations posed by it. The Court holds *that this case* is dismissed because SB 40 is unenforceable and not only because the plaintiffs failed their burden of proof." The court also concluded the school district had standing to challenge S.B. 40 on constitutional grounds because it was foreseeable the perceived due process violations would recur if another emergency arose. And the court noted the Attorney General had not discussed "*the Court's separate standing* to raise issues implicating the integrity of the judicial system. . . . The reason it is not addressed is that there is no basis to restrict the Court's standing to do so."

15

The court ultimately ruled S.B. 40 was unenforceable because it violated both due process and separation of powers. It also touched briefly on severability, noting that

"SB 40 does contain a severability clause in § 14 to prevent the invalidity of other portions of the act if any portion of the same is declared unconstitutional or invalid. But here, the enforcement provisions are the Act. They are integral to the entire legislative scheme. Although given a chance to address this . . . the Attorney General did not respond."

In closing, the district court stated:

"The Court determined at the hearing of this matter that neither of the plaintiffs' children were required to wear masks. In Ms. Butler's case, her children had an exemption. In Mr. Bozarth's case, he chose not to obtain an exemption, preferring to attack the mask policy directly. They have not offered any new evidence to alter the Court's previous determination *but even if they had, the act is unenforceable.* The Court is not critical of any parent who feels strongly that government action might be regarded as arbitrary or even harmful to one's child. But there are existing legal procedures to address such potential violations without depending on the violation of other equally important rights.

"*This matter is, therefore, dismissed with prejudice in favor of the defendant, and SB 40 is declared to be unenforceable for the reasons outlined in this order.*" (Emphases added.)

But the court did not expressly enjoin S.B. 40's operation, although it seems to have thought its ruling extended statewide by declaring: "Actions filed pursuant to [S.B. 40], including the instant one, are hereby determined to be unenforceable, regardless of the merits." Shortly after entering this ruling, it denied the Attorney General's motion to stay judgment pending appeal.

16

The Attorney General then appealed directly to this court under K.S.A. 60-2101(b). We granted the Attorney General's motion to hear this appeal on an expedited basis. We also granted his motion to stay the district court's judgment pending the appeal's outcome. Butler and Bozarth did not appeal, so any adverse rulings against them are final. *Satterfield v. Satterfield*, 221 Kan. 15, 16, 558 P.2d 108 (1976) (judgment became final and binding on parties when appeal was not taken within time provided by statute).

We also permitted several entities and individuals to file amici briefs given their asserted interest in the subject matter:  Governor Laura Kelly, Blue Valley Unified School District No. 229, the Kansas Association of School Boards Legal Assistance Fund, the Kansas Chamber of Commerce, the Kansas Justice Institute, and a group of plaintiffs in a Johnson County lawsuit asserting S.B. 40 challenges against the Olathe and Blue Valley school districts. For the most part, they advance conflicting views about the propriety of the court's action in a pandemic, the legislation's constitutionality, its wisdom as public policy, and their thoughts on S.B. 40's amenability for severance if a constitutional infirmity were found. We appreciate their input and the quality of their submissions.

Before oral argument, the court asked the parties to brief whether a timely district-level grievance to its policy was a jurisdictional prerequisite to a civil action under S.B. 40, section 1(d). Responsive briefing was filed by the Attorney General, SMSD, and the plaintiffs Butler and Bozarth. No one claimed this timing issue created a jurisdictional prerequisite.

We conclude jurisdiction was proper in the district court, and is proper here. The parties agree. But the dissent argues the district court lost case-or-controversy jurisdiction

17

to resolve the constitutional questions midway through its disposition of this case once it decided SMSD's mask policy was not subject to attack under S.B. 40. Slip op. at 32, 35. And the dissent goes on to suggest the Attorney General lost his ability to seek reversal of the declaration that S.B. 40 was unconstitutional after Butler and Bozarth failed to cross-appeal on whether S.B. 40 applied to their claim against SMSD. We disagree with the dissent, which seems to present these two concepts as a single argument, when they are distinct anti-jurisdiction claims.

The dissent's first claim that the district court lost jurisdiction seemingly treats the court's disposition as a temporal order—inapplicability first and constitutionality second. But the record does not support this perspective. The district court's first June 8 order gave Butler and Bozarth additional time to demonstrate S.B. 40 governed their claims, so it did not finally resolve the applicability issue. See K.S.A. 60-254 (providing generally "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").

The district court's July 15 ruling is the final disposition, and it addressed both S.B. 40's applicability and its constitutionality in the same journal entry. And the court expressly said it was dismissing the case "because SB 40 is unenforceable and not only because the plaintiffs failed their burden of proof." Without question, those are separate, alternative rulings supporting the same judgment of dismissal. See, e.g., *Ellie v. State*, 312 Kan. 835, 838, 481 P.3d 1208 (2021) (affirming district court decision granting collateral relief from convictions on alternative grounds, when State failed to preserve appellate challenges to each). The journal entry simultaneously finalized both rulings when the document was signed and filed in the clerk's office. See K.S.A. 60-258 ("No judgment is effective unless and until a journal entry or judgment form is signed by the

18

judge and filed with the clerk."). The district court's decision on S.B. 40's constitutionality, though improper as we discuss below, was not advisory when it was made. There is no legal support for a contention that the district court could somehow lose case-or-controversy jurisdiction in mid-ruling when entering judgment based on alternative theories. Said differently, if a district court supports its final ruling with multiple reasons, how can one of those reasons become mere dictum?

The dissent's second claim suggests Butler and Bozarth's failure to cross-appeal means we have no jurisdiction to hear the Attorney General's concerns because he was not a party to the proceedings; or even if he was, his intervenor status precludes any appeal that "does not affect the core dispute that underlies the case." But the record here is crystal clear that the Attorney General became a party to this case when he intervened in it. See K.S.A. 2020 Supp. 60-224(b)(2)(C) ("When notice to the attorney general is required by K.S.A. 75-764, and amendments thereto, the court must permit intervention by the attorney general on proper application."); Black's Law Dictionary 983 (11th ed. 2019) (defining "intervention" to include the legal procedure by which a third party "is allowed to become a party to the litigation"). And the district court's judgment both dismissed the case *and* broadly declared S.B. 40 "unenforceable through its enforcement provisions." See K.S.A. 60-1701 (describing courts' "power to declare the rights, status, and other legal relations" and providing that "declarations shall have the force and effect of a final judgment"). Even more boldly, the district court's judgment suggests the ruling stretches beyond the confines of this particular case by announcing: "Actions filed pursuant to [S.B. 40], including the instant one, are hereby determined to be unenforceable, regardless of the merits."

As both a party to this litigation and the state's chief law enforcement officer, the Attorney General was entitled to appeal from this aspect of the trial court's judgment. See K.S.A. 75-702 ("The attorney general shall appear for the state, and prosecute and defend

19

any and all actions and proceedings, civil or criminal, in the Kansas supreme court, the Kansas court of appeals and in all federal courts, in which the state shall be interested or a party, and shall, when so appearing, control the state's prosecution or defense."); *Memorial Hosp. Ass'n Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986). And unlike the intervenor the dissent refers to from *Ternes v. Galichia*, 297 Kan. 918, 305 P.3d 617 (2013), who was a private litigant seeking to assert third party rights, state law imbues the Attorney General with a special status when litigation involves the public interest and a statute's constitutionality. See K.S.A. 2020 Supp. 60-224(b)(2)(C); K.S.A. 75-702; and K.S.A. 75-764.

Similarly, the dissent's perception that this appeal as currently constituted lacks any concrete adversity between the Attorney General and SMSD or plaintiffs, and that the State has no interest in the parties' initial action, fades to the background for case-or-controversy purposes under these circumstances. The Attorney General undertakes to vindicate the public interest, faced with a district court ruling nullifying sweeping legislation designed to address various governmental duties and obligations during a public health emergency. And SMSD, in fact, did aggressively challenge S.B. 40's validity before the district court once prompted to do so and continues those same arguments before this court. Moreover, despite the dissent's suggestion that the Attorney General does not argue for this court's jurisdiction, he has aggressively sought relief in this court from the district court's judgment invalidating the law, including his request for a stay pending appeal and at oral argument when pressed about jurisdictional concerns.

Granted, and as with any other litigant, the Attorney General may not obtain an advisory opinion from the courts. But we have also said, for example, in the context of original actions in mandamus:

20

"When actions are brought on relation of the attorney general or another government officer . . . there is no requirement of actual injury. In such a case, it must be shown: (1) there is a question relating to a specified duty imposed by law and not involving discretion; (2) the question must be of great public importance and concern sufficient to warrant the court exercising its discretionary jurisdiction; and (3) the question must arise from an actual controversy, meaning a situation must have arisen which implicates the official's duty. [Citations omitted.]" *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 909, 179 P.3d 366 (2008).

See also *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 53, 687 P.2d 622 (1984) ("[A]n actual controversy is presented where it is alleged by the attorney general, on behalf of the people of this state, that the legislature has exceeded its power and usurped the authority of the executive branch. 'The state is a proper party—indeed *the* proper party—to bring this action. The state is always interested where the integrity of its constitution or statutes is involved.'").

The Attorney General is charged with enforcing our state's laws, one of which the district court here sweepingly adjudged to be unenforceable. That judgment implicates not only the Attorney General's own duty to defend the laws, but also the ability and duty of a host of other government entities and officials charged with following S.B. 40 during both statewide and local disaster emergencies. And as the briefing demonstrates, the Attorney General has a concrete adversary in the form of various public bodies, such as SMSD, seeking relief from S.B. 40's obligations.

For these reasons, we reject the dissent's insistence that we should simply dismiss this appeal for lack of jurisdiction.

DISCUSSION

To better explain why we must consider the constitutional avoidance doctrine, it helps to recap this litigation's posture as it ended in the district court and now stands in this court. First, it must be accepted that S.B. 40 never had anything to do with the grievances advanced by Butler and Bozarth, even though they mistakenly believed it did. S.B. 40 is simply irrelevant to their claims because they challenged an SMSD policy adopted in 2020. Second, the district court's ruling acknowledging S.B. 40 was inapplicable raises a most obvious concern as to why the court did not stop there and embarked instead on its own analysis of that legislation's constitutionality.

We begin by briefly discussing the first point about applicability, even though it is not an issue on appeal, because it sharpens our focus on the second point, which is dispositive.

*S.B. 40's inapplicability to this case*

The only basis for remedy Butler and Bozarth sought was through S.B. 40, section 1. Its subsection (d)(1) specifies section 1's applicability in these terms:

> "*An employee, a student or the parent or guardian of a student aggrieved by a decision of the board of education* under subsection (c)(2) may file a civil action in the district court of the county in which such party resides or in the district court of Shawnee county, Kansas, *within 30 days after such decision is issued by the board*." (Emphases added.) L. 2021, ch. 7, § 1(d)(1).

No one disputes Butler and Bozarth are parents of SMSD students or that they challenged a school district policy, but that is not enough. For them to successfully invoke S.B. 40, section 1 in a district court, their challenge must follow strict timelines

22

and procedural steps. District court action must be initiated within 30 days of the district's issuance of its decision after conducting a requested hearing. L. 2021, ch. 7, § 1(d)(1). And the district-level challenge must itself be mounted within 30 days of the complained-of policy adopted by the district. See L. 2021, ch. 7, § 1(c)(1). The district court recognized Butler and Bozarth's suit likely did not meet these requirements in its June 8 preliminary written order, concluding that both of them appeared concerned only with the school board's original 2020 mask policy. And based on that, the court decided S.B. 40 "*has no application to the plaintiffs* who complain about past injuries under a policy enacted in July of 2020." (Emphasis added.) In other words, the court understood Butler and Bozarth could not use S.B. 40 to attack the district because the school board adopted the mask policy well before S.B. 40 even became law, so the court could have entered judgment in the district's favor at that point.

But the court very reasonably provided Butler and Bozarth with another 10 days to supplement their claims since they were self-represented and not law trained. In doing this, the court said it was affording them one last opportunity to show any action "the District has taken that constitutes some current policy that impacts their children." It also warned, "*If they cannot demonstrate the same, this suit will be dismissed*." (Emphasis added.) And since neither supplemented their claims within the allotted time, the court made good on its June 8 warning and dismissed their lawsuit with prejudice in its July 15 order. The court held, "They have not offered any new evidence to alter the Court's previous determinations *but even if they had, the act is unenforceable*." (Emphasis added.)

To recap, the court's ruling on S.B. 40's inapplicability to the complaints by Butler and Bozarth was not appealed, so it is now final for purposes of this appeal. See *Satterfield*, 221 Kan. at 16; see also K.S.A. 2020 Supp. 60-2103(h) (providing appellee who desires review of "rulings and decisions of which such appellee complains" must

give notice of cross-appeal within 21 days after notice of appeal has been served); *Lumry v. State*, 305 Kan. 545, 554, 385 P.3d 479 (2016) (holding Supreme Court lacked jurisdiction to review issue decided adversely to appellee by district court when appellee did not cross-appeal). Said another way, and with an eye toward the avoidance doctrine, this litigation could have been over based only on this if the court had stood down.

*The district court's pivot to S.B. 40's unconstitutionality*

But the district court's June 8 order self-initiated a deeper examination into S.B. 40's constitutionality. It explained in a footnote: "The Court raises these serious issues sua sponte *because it has been given no choice but to adjudicate a case and controversy within a scheme that cannot be separated from its impact on the judiciary*." (Emphasis added.) To support what it was doing, the court cited two cases: *Tolen v. State*, 285 Kan. 672, 176 P.3d 170 (2008), and *State v. Adams*, 283 Kan. 365, 153 P.3d 512 (2007). Neither helps the district court.

*Tolen* merely stands for the proposition that an appellate court may address a new issue not properly preserved below when circumstances allow it. There, the *Tolen* court sua sponte raised a new issue during oral argument. In response, a criminal defendant argued for the first time on appeal that a statute must be unconstitutional. In its written decision, the *Tolen* court decided to address the new issue because it had raised it sua sponte. *Tolen* only deals with an issue's preservation and a reviewing court's limited power to consider a new issue. *Tolen*, 285 Kan. at 675-76. We fail to see how *Tolen* supports the district court's course of action concerning S.B. 40. And *Adams* is not on point either. There, a criminal defendant's speedy trial claim was properly preserved in the district court but not raised on appeal. The *Adams* court decided to address the nonconstitutional speedy trial issue because its resolution "serves the ends of justice by reversing [the defendant's] convictions and vacating his sentences." *Adams*, 283 Kan. at

24

367-68. The *Adams* court noted "this case presents the exceptional circumstances necessary for raising the statutory speedy trial issue sua sponte." 283 Kan. at 368. Here, unlike *Adams*, there was no necessity to bring up the new issue. In short, neither case supports the district court's analytical diversion into S.B. 40's constitutionality.

We also cannot accept that the district court was forced to address the statute's constitutionality, even if it believed it had "no choice but to adjudicate a case and controversy within a scheme that cannot be separated from its impact on the judiciary." Admittedly, the court was speaking about how S.B. 40 obligates courts to conduct hearings "within 72 hours after receipt of a petition" and requires issuing an order "on such petition within seven days after the hearing is conducted" that is backed up with a direction to grant "the relief requested" if the court fails to issue such order. And we can accept that those statutory directives undeniably burden the orderly adjudication of cases in our Kansas courts as shown here. After all, and despite the court's exceptionally prompt disposition, it appears to have been outside S.B. 40's 72-hour requirement—had it applied—when it conducted its hearing about 117 hours after the petition's filing. See K.S.A. 2020 Supp. 60-206(a)(2) (statutory time period specified in hours includes hours during intermediate weekends and legal holidays, and if the period ends on a weekend or legal holiday it runs until the next day that is not a weekend or holiday). And one might even quibble whether the court's June 8 order complied with a strict interpretation of S.B. 40's seven-day deadline since it was not a final disposition.

But by this juncture the court had determined in its June 8 order that: (1) the petition challenging the school board policy from July 27, 2020, was far beyond the 30-day window S.B. 40 permits; (2) other court decisions within the same judicial district had already held under similar circumstances that S.B. 40 did not apply to district policies adopted before it became law; (3) Section 1 of S.B. 40 by that time had expired with the end of the COVID-19 state of disaster emergency; and (4) no one had asked the court to

25

undertake a constitutional analysis. So it seems fairly apparent the time quandary the court perceived as its justification to divert this case onto a constitutional battlefield was illusory because it *did* have a "choice" to adjudicate this case outside the S.B. 40 framework.

Said differently, before it gave notice to the Attorney General the court knew it very likely had a nonconstitutional path for disposing of this case on undisputed grounds. The court should have considered the constitutional avoidance doctrine's application to its concerns under these obvious circumstances and restrained itself from going further. We explain next why its failure to do so requires us to reverse that portion of the ruling addressing S.B. 40's constitutionality.

*The doctrine of constitutional avoidance*

Judicial recognition of constitutional avoidance flows from *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170, 2 L. Ed. 60 (1803), when the United States Supreme Court articulated its authority to review acts of Congress and determine whether those acts were unconstitutional. *Marbury*'s author, Chief Justice John Marshall, sternly advised in 1883 against unneeded judicial consideration of constitutional questions involving enactments of a co-equal branch of government. He explained:

> "No questions can be brought before a judicial tribunal of greater delicacy than those which involve the constitutionality of a legislative act. If they become indispensably necessary to the case, the court must meet and decide them; but if the case may be determined on other points, a just respect for the legislature requires, that the obligation of its laws should not be unnecessarily and wantonly assailed." *Ex parte Randolph*, 20 F. Cas. 242, 254 (C.C.D. Va. 1833).

Fast forward 100 years, and the doctrine received plainer articulation in a concurring opinion written by Justice Brandeis in *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 56 S. Ct. 466, 80 L. Ed. 688 (1936). That concurrence, joined by Justices Cardozo, Roberts, and Stone, has stood the test of time, and gained admirable notoriety. See *Delaware v. Van Arsdall*, 475 U.S. 673, 693, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986) (Stevens, J., dissenting) (calling Brandeis' *Ashwander* concurrence "one of the most respected opinions ever written by a Member of this Court"). Justice Brandeis laid out seven components to constitutional avoidance, and the most relevant here he described as: "The Court will not pass upon a constitutional question although properly presented by the record, *if there is also present some other ground upon which the case may be disposed of*." (Emphasis added.) *Ashwander*, 297 U.S. at 346-48.

In Kansas, the avoidance doctrine usually takes one of two forms. The first is as a canon of statutory construction expressing a preference for construing a statute to avoid constitutional doubts if there is another reasonable way to do so. E.g., *Johnson v. U.S. Food Serv.*, 312 Kan. 597, 602, 478 P.3d 776 (2021) (applying constitutional avoidance to adopt construction of ambiguous workers compensation statute that avoided constitutional question).

The second form applicable here is a policy about how to adjudicate controversies. Under it, a court refrains from deciding constitutional questions unless it is necessary to do so. And this doctrine has an early Kansas pedigree as well. E.g., *Chicago, K. & W. R. Co. v. Abilene Town-Site Co.*, 42 Kan. 104, 111, 21 P. 1112 (1889) (quoting Cooley, A Treatise on the Constitutional Limitations 159 [1868]) ("'It must be evident to any one that the power to declare a legislative enactment void is one which the judge, conscious of the fallibility of the human judgment, will shrink from exercising in any case where he can conscientiously, and with due regard to duty and official oath, decline the responsibility.'"); *State ex rel. Fatzer v. Barnes*, 171 Kan. 491, 494, 233 P.2d 724 (1951)

("Courts are reluctant to hold acts of the legislature invalid, and uniformly decline to do so when there is one or more other grounds upon which the decision can be based."); *State ex rel. Anderson v. Fadely*, 180 Kan. 652, Syl. ¶ 3, 308 P.2d 537 (1957) ("While courts will not refuse to pass on the constitutionality of statutes in any proceeding in which such determination is necessarily involved, unnecessary consideration of attacks on their validity will be avoided and courts will not assume to pass upon constitutional questions not duly raised and insisted upon since they are not properly before it.").

In more recent years, this court has often adhered to it. E.g., *In re Bowman*, 309 Kan. 941, 950, 441 P.3d 451 (2019) ("[W]e need not decide today whether a second trial would violate the federal or state constitutions if we can resolve Bowman's case based on statutory interpretation. . . . 'Appellate courts generally avoid making unnecessary constitutional decisions.'"); *State v. Wetrich*, 307 Kan. 552, 558, 412 P.3d 984 (2018); *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 658, 367 P.3d 282 (2016); *Smith v. Kansas Dep't of Revenue*, 291 Kan. 510, 519, 242 P.3d 1179 (2010); *Wilson v. Sebelius*, 276 Kan. 87, 96, 72 P.3d 553 (2003). Regardless, this doctrine has been an important feature in how courts approach legislative enactments.

Admittedly this doctrine is prudential, so our court has bypassed it on occasion after conceding the necessity for doing so and despite the rule's strictures. E.g., *Felten Truck Line, Inc. v. State Bd. of Tax Appeals*, 183 Kan. 287, 292-93, 327 P.2d 836 (1958) (holding court would consider statute's constitutionality in an original action in mandamus, even though "there is merit" to defendants' claim that plaintiffs had an adequate remedy of law). But even then, the *Felten* court justified this departure by noting defendants had not previously objected to two related alternative writs of mandamus issued by the court, and because the statutes directly impacted all litigants. The court concluded "we would hardly be justified in disposing of the matter on such

28

technical grounds and therefore feel obligated to consider the case on its merits on the constitutional question involved." 183 Kan. at 293.

So why do courts follow this rule? We answered that question in 1889 by quoting from Justice Cooley's work on Constitutional Limitations and noting the judiciary's adherence to this tenet is not only to be "more proper and more respectful to a coordinate department," but also to give judicial decisions greater weight when there is no alternative but to consider the constitutional question. *Chicago, K. & W. R. Co.*, 42 Kan. at 111. Similarly, Justice Brandeis touted the doctrine's worth in *Ashwander*, 297 U.S. at 355, by acknowledging the reciprocal nature of our country's governmental structure and quoting the following passage from *Union Pac. R. Co. v. United States*, 99 U.S. 700, 718, 25 L. Ed. 496 (1878): "'One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule.'"

The Supreme Court later described the justifications in more general terms:

"The policy's ultimate foundations, some if not all of which also sustain the jurisdictional limitation, lie in all that goes to make up the unique place and character, in our scheme, of judicial review of governmental action for constitutionality. They are found in the delicacy of that function, particularly in view of possible consequences for others stemming also from constitutional roots; the comparative finality of those consequences; the consideration due to the judgment of other repositories of constitutional power concerning the scope of their authority; the necessity, if government is to function constitutionally, for each to keep within its power, including the courts; the inherent limitations of the judicial process, arising especially from its largely negative character and limited resources of enforcement; withal in the paramount importance of constitutional adjudication in our system.

29

"All these considerations and perhaps others, transcending specific procedures, have united to form and sustain the policy. Its execution has involved a continuous choice between the obvious advantages it produces for the functioning of government in all its coordinate parts and the very real disadvantages, for the assurance of rights, which deferring decision very often entails. On the other hand it is not altogether speculative that a contrary policy, of accelerated decision, might do equal or greater harm for the security of private rights, without attaining any of the benefits of tolerance and harmony for the functioning of the various authorities in our scheme. For premature and relatively abstract decision, which such a policy would be most likely to promote, have their part too in rendering rights uncertain and insecure." *Rescue Army v. Municipal Court of City of Los Angeles*, 331 U.S. 549, 572, 67 S. Ct. 1409, 91 L. Ed. 1666 (1947).

*The district court's avoidance doctrine error*

Justifications for adherence to the avoidance doctrine are on display here. By invoking K.S.A. 75-764(b)(2) to notify the Attorney General that S.B. 40 was likely invalid, the court cast immediate doubt on statewide legislation enacted to address a state of emergency, prompting an amicus filing on behalf of 280 unified school districts and 31 education cooperatives. And the court seems to have attempted to extend its remedial reach beyond the case at hand by holding in the July 15 order that "[a]ctions filed pursuant to [S.B. 40], including the instant one, are hereby determined to be unenforceable, regardless of the merits." This caused the Attorney General to argue the district court's rulings "have combined to create unnecessary and disruptive confusion about the state of the Kansas Emergency Management Act, K.S.A. 48-920, et seq." See K.S.A. 2020 Supp. 60-1712 ("When declaratory relief is sought . . . no declaration shall be binding against persons not . . . joined as parties to the proceeding."); cf. *Cross v. Kansas Dep't of Revenue*, 279 Kan. 501, 508, 110 P.3d 438 (2005); *State v. Smiley*, 65 Kan. 240, Syl. ¶ 2, 69 P. 199 (1902). And from the uncharacteristically high volume of amicus briefing filed in this court, and the concerns expressed in those briefs in a time of pandemic, the Attorney General's concern seems prescient.

30

Judicial responsibility "does not amount to an unlimited power to survey the statute books and pass judgment on laws before the courts are called upon to enforce them." *Younger v. Harris*, 401 U.S. 37, 52, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). Necessity is the watchword when invoking the judiciary's solemn power to declare a legislative act invalid. That necessity was lacking here.

It cannot be emphasized enough that by the time Butler and Bozarth had failed to come forward with additional evidence, the district court had already acknowledged S.B. 40 was inapplicable to the case without that evidence. And the court understood that both the statewide state of disaster emergency and the school year had ended. The district court erred by ignoring the constitutional avoidance doctrine and failing to abide by it.

CONCLUSION

Our decision here should not be seen as sanctioning judicial timidity. Since statehood, this court has recognized repeatedly the judiciary's duty to declare an act of the Legislature, or portion of it, unconstitutional when properly called on to do so. And in a different case, one or more of the arguments made against S.B. 40 might very well carry the day. But this case compels adherence to the avoidance doctrine.

We reverse that portion of the district court's judgment subject to this appeal and express no opinion about 2021 S.B. 40's constitutionality. Given this disposition, it is unnecessary to consider the parties' remaining arguments.

31

\* \* \*

LUCKERT, C.J., dissenting: I dissent because this court should dismiss the Attorney General's appeal without saying any more than the district court lacked jurisdiction to consider the constitutionality of 2021 Kansas Senate Bill 40, L. 2021, ch. 7, § 1 (S.B. 40), codified at K.S.A. 2021 Supp. 48-925c. The district court acted without jurisdiction when it issued an advisory opinion about S.B. 40, and we should make that point and dismiss this appeal for lack of jurisdiction.

Once the district court determined S.B. 40 did not apply to the lawsuit brought by Kristin Butler and Scott Bozarth against the Shawnee Mission School District (SMSD), it lacked authority to discuss S.B. 40's unconstitutionality. At that point the question of S.B. 40's constitutionality was merely advisory—a hypothetical discussion applicable only if S.B. 40 had applied. But Kansas courts "do not have jurisdiction over purely hypothetical questions." *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 908, 179 P.3d 366 (2008). That is because "[t]he judicial power granted by Article 3 of the Kansas Constitution does not include the power to give advisory opinions." 285 Kan. at 898; see *In re Estate of Lentz*, 312 Kan. 490, 505, 476 P.3d 1151 (2020) (Luckert, C.J., concurring) (discussing error in deciding hypothetical jurisdiction rationales and jurisprudential and constitutional implications).

The advisory nature of the district court's opinion does not change simply because the Attorney General became involved at the district court level. Nor does the Attorney General's involvement provide an avenue for jurisdiction to decide the constitutionality of S.B. 40. A brief procedural history helps explain the limited nature of the Attorney General's role.

32

The Attorney General's involvement arose under K.S.A. 75-764. Under its provisions, if a party or the district court questions the constitutionality of a controlling statute, the district court must ensure that the Attorney General has "notice of the disputed validity" and "has been given an opportunity to appear and be heard on the question of the validity of the statute." K.S.A. 75-764(b)(2). When Butler and Bozarth sued the SMSD under S.B. 40, the court raised questions of S.B. 40's constitutionality and sought to assure the Attorney General had notice.

Once notice was given, the parties and the court treated the Attorney General as an intervenor. For example, the district court titled its final order as a "Judgment and Final Order After Intervention of the Kansas Attorney General." And the text of the order reads that "the Court asked the Kansas Attorney General to intervene in this matter because of identifiable constitutional issues in SB 40." K.S.A. 2020 Supp. 60-224(b)(2)(C) (requiring court to "permit intervention by the attorney general on proper application" if "notice to the attorney general is required by K.S.A. 75-764").

After the Attorney General appeared and argued, the district court dismissed the action. In doing so, it listed three reasons Butler and Bozarth's action failed. First, it ruled Butler and Bozarth did not identify a policy subject to a challenge under S.B. 40. Second, it ruled the lawsuit was moot. Finally, it declared S.B. 40 "unenforceable" because it violated various constitutional provisions.

Butler and Bozarth did not appeal, but the Attorney General did. He challenges only the district court's constitutional rulings. Thus, no one appealed the first basis for the district court's ruling—that S.B. 40 did not apply. That ruling is final. The finality of that decision would not change even if this court disagreed with the district court's third holding that S.B. 40 was unconstitutional, and it is only that holding before us on appeal. Yet, at this point, no action exists between the original parties of this suit—Butler,

33

Bozarth, and SMSD—and our decision in this appeal would be an empty exercise. In other words, this appeal asks us to resolve a purely advisory issue—one that does not affect the outcome of the original dispute.

The district court's and this court's lack of jurisdiction arises because Kansas courts have the power to adjudicate only actual cases and controversies. *Sebelius*, 285 Kan. at 896, 910. The presence of the Attorney General and the collateral issues with which he was involved did not themselves create a case or controversy. Our caselaw recognizes that under such circumstances, an appellate court lacks jurisdiction to decide an intervenor's appeal. *Ternes v. Galichia*, 297 Kan. 918, 305 P.3d 617 (2013), is one such case.

In *Ternes*, an attorney who allegedly failed to timely file a medical malpractice action tried to intervene in a case brought to prosecute the medical malpractice claim. The district court dismissed the medical malpractice case. The attorney appealed but the medical malpractice plaintiff did not. We dismissed the attorney's appeal. We explained that if "the original plaintiff declines to take an appeal and the only party seeking appellate review is an intervenor, the intervenor must be able to demonstrate independent standing to prosecute the action." *Ternes*, 297 Kan. at 924 (citing *Diamond v. Charles*, 476 U.S. 54, 68, 106 S. Ct. 1697, 90 L. Ed. 2d 48 [1986]). The attorney lacked standing to make a medical malpractice claim against his former client's physician. Given that and addressing the right to appeal from an unfavorable ruling, we noted the "'basic proposition' that 'a plaintiff who lacks standing to bring suit cannot require an appellate court to decide on the merits.'" 297 Kan. at 924 (quoting 15A Wright, Miller & Cooper, Federal Practice and Procedure § 3902, p. 61 [2d ed. 1992]). This court concluded, "This rule is sensible in that it prevents the creation of an 'empty' lawsuit, in which an intervenor-plaintiff could prevail on appeal but could not pursue any claim on remand." 297 Kan. at 924. Applying these principles, we dismissed the attorney's appeal, noting he

lacked "an ongoing interest in the [underlying] dispute sufficient to establish concrete adverseness. See *Bond v. United States*, 564 U.S. 211, 217, 131 S. Ct. 2355, 180 L. Ed. 2d 269 (2011)." *Ternes*, 297 Kan. at 921-22.

Likewise, here, even if the Attorney General prevailed before us, that would not affect the finality of the judgment for SMSD. It would not matter whether S.B. 40 was constitutional because it does not apply in this case. Butler and Bozarth were the only parties with a stake to bring this lawsuit. Without their presence, there is no actual controversy, and the district court's ruling on the constitutionality of S.B. 40 stands merely as dictum issued by the district court. That dictum neither binds the parties in the suit brought by Butler and Bozarth against SMSD nor anyone else. See *Graham v. Herring*, 297 Kan. 847, 861, 305 P.3d 585 (2013) ("[A]n unpublished memorandum opinion is not binding precedent, except as may occur through the doctrines of law of the case, res judicata, or collateral estoppel."); *Law v. Law Co. Bldg. Assocs.*, 295 Kan. 551, 564, 289 P.3d 1066 (2012) (dicta is not binding); see also *Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 428, 131 S. Ct. 2527, 180 L. Ed. 2d 435 (2011) ("[F]ederal district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding other judges, even members of the same court.").

I would thus dismiss this appeal after finding the district court lacked jurisdiction to issue the advisory opinion that underlies this appeal.

In response to my position about the lack of jurisdiction, the majority attempts to distinguish *Ternes* based on the Attorney General's role under K.S.A. 75-702. Under that statute, "The attorney general shall appear for the state, and prosecute and defend any and all actions and proceedings, . . . [and] control the state's prosecution or defense." Here, however, the Attorney General did not prosecute or defend an "action." And allowing the Attorney General to keep alive an issue irrelevant to the action condones the type of

"empty" lawsuit we cautioned against in *Ternes*. Cf. *Sebelius*, 285 Kan. at 891. I discern nothing in the words of K.S.A. 75-702 or K.S.A. 75-764 that displaces the case or controversy requirements of the Kansas Constitution and that would allow this appeal. See *State v. Queen*, 313 Kan. 12, 17, 482 P.3d 1117 (2021) (courts determine legislative intent by examining the statute's wording). Instead, K.S.A. 75-702 requires an underlying interest in the action, which tracks with *Ternes*' holding that would allow an intervenor to continue to pursue a collateral issue only if that intervenor had standing to sue or defend the action.

Finally, the majority defends jurisdiction by citing declaratory and mandamus actions. But the Attorney General never petitioned seeking either declaratory or mandamus relief. The only procedural mechanism for the Attorney General's presence is K.S.A. 75-764.

Ironically, the majority argues for this court's jurisdiction when the Attorney General does not. Rather, the Attorney General has consistently argued the district court could not consider the constitutionality of S.B. 40 because it did not apply to this case and any controversy was moot. In his brief, the Attorney General notes that Article 3 of the Kansas Constitution limits the courts' power to deciding actual controversies. He cites *Baker v. Hayden*, 313 Kan. 667, 490 P.3d 1164 (2021), and *Sebelius*, 285 Kan. 875, for support. After reviewing the requirements for a case or controversy, he concludes "the district court . . . offered an impermissible advisory opinion on the constitutionality of SB 40." The majority thus champions a power the Attorney General does not want to assume as it stakes a position on jurisdiction that contradicts that of the Attorney General. I agree with the Attorney General's position. The Attorney General has no role to prosecute or defend here, is not a party, and has only an interest defined by K.S.A. 75-764.

36

Finally, I disagree with the majority that the Attorney General needed to appeal because of the broad dicta in the district court's opinion that purported to bind all courts. As I have discussed, district courts lack the authority to bind other courts. The district court's opinion is only binding on the parties if certain claim preclusion principles apply. *Law*, 295 Kan. at 564. The Attorney General would not be limited by principles of claim or issue preclusion if this issue were to be raised in another case because the holding here was dicta. See *Graham*, 297 Kan. at 861; *Law*, 295 Kan. at 564. The district court's opinion thus does not foreclose future arguments addressing the constitutionality of S.B. 40.

In summary, all we are left with is a request for an advisory opinion. We lack jurisdiction to provide that. *Sebelius*, 285 Kan. at 898. This appeal should be dismissed. For these reasons, I dissent.

STEGALL, J., joins the foregoing dissent.